MARTIN TUCKER, PROSECUTOR, v. FRANK J. BELTRAMO, INCORPORATED, A BODY CORPORATE, RESPONDENT.

Argued May 6, 1936—Decided August 25, 1936.

Before Justices BODINE and HEHER.

For the prosecutor, *Nathan Rabinowitz* (*Isadore Rabinowitz*, of counsel).

For the respondent, *Merritt Lane.*

The opinion of the court was delivered by

HEHER, J.   The primary question at issue is whether a "final judgment" awarding compensation to an injured employe under the Workmen's Compensation act of 1911 (*Pamph. L., p.* 134), as amended, where the issue was litigated and determined "on its merits," without in anywise "involving the elements of agreement," is a "formal award" within the intendment of paragraph 21 (f), section II of the act, as amended by chapter 279 of the laws of 1931 (*Pamph. L., p.* 704), and therefore reviewable within two years from the date when the injured employe last received a payment of compensation on the ground that his incapacity "has subsequently increased."   A secondary question is whether there has been in point of fact a subsequent increase of disability.   The employe sued out a writ of *certiorari;* and, pursuant to its mandate, the record of the proceedings below has been returned for review.

The chronology and a resume of the pertinent facts and findings follow:

On February 14th, 1933, prosecutor suffered injury by an accident which arose out of and in the course of his employment. His petition for compensation under the Compensation act, *supra,* came on for hearing on October 23d, 1933; and, on October 30th, 1933, the deputy commissioner made his findings. He resolved the basic issues in favor of prosecutor, and found the permanent disability to be "ten per cent. loss of use of the right hand." Neither side appealed, and the judgment was satisfied in due course. On February 10th, 1934, the prosecutor, alleging increased disability, filed a petition for additional compensation; and, on October 16th, 1934, after hearings held on March 19th and April 16th, 1934, the deputy commissioner (he also heard the original petition) filed a determination of facts and rule for judgment dated September 24th, 1934. He found that there had been a "progressive increase" in disability since the determination and judgment entered on the original petition, and that the disablement then was thirty per cent. of the normal use and function of the hand. Compensation was awarded on the basis of a twenty per cent. increase in incapacity.

The employer appealed; and the Passaic Common Pleas reversed the judgment, holding that paragraph 21 (f) of the Compensation act was inapplicable where the issue of the right to compensation "was fully adjudicated on the merits after a litigated hearing with testimony adduced on both sides," and was followed by payment of the judgment, as distinguished from "a mere agreement of compromise formally approved by the bureau"—citing *Herbert* v. *Newark Hardware Co.,* 107 *N. J. L.* 24; *affirmed,* 109 *Id.* 266, and *Federated Metals Co.* v. *Boyko,* 11 *N. J. Mis. R.* 807; *affirmed,* 112 *N. J. L.* 87. The judge found a substantial distinction between "final judgments" and "formal awards." He also concluded that the finding of increased disability was contrary to the weight of the evidence.

*First:* The initial point of inquiry is the legislative purpose embodied in chapter 279 of the laws of 1931, *supra,*

amending paragraph 21 (f), section II, of the Compensation act. If there be any apparent obscurity in the language employed, the true legislative sense of the words used will be readily resolved by a consideration of the state of the law at the time of the enactment of the amendments, and its historical background. The basic statute of 1911, *supra,* invested the Courts of Common Pleas with original jurisdiction to enforce the rights thereby conferred. It provided (paragraph 20, section II) for a determination "in a summary manner" of "the merits of the controversy," and for the entry of judgment upon the judge's "determination * * * filed in writing with the clerk * * *." The second unnumbered clause of paragraph 21, section II, provided that "an agreement or award of compensation may be modified at any time by a subsequent agreement, or *at any time after one year from the time when the same became operative it may be* reviewed upon the application of either party on the ground that the incapacity of the injured employe has subsequently increased or diminished."

In 1918, the compensation bureau came into being. The act creating it (chapter 149 of the session laws of that year, as amended by chapter 229 of the laws of 1921) conditions all agreements for the payment of compensation made by the parties *inter se* upon the approval of the bureau, and transferred to that tribunal the original jurisdiction theretofore vested in the Pleas. *Pamph. L.* 1918, *p.* 429; *Pamph. L.* 1921, *p.* 731. See, also, chapter 230 of the laws of 1921. *Pamph. L., p.* 736. It provides (paragraph 11, section II) that "a statement containing the date and place of hearing, together with the judgment of the commissioner, deputy commissioner or referee," shall be filed in the office of the secretary of the bureau, and that "a copy of the judgment of the commissioner, deputy commissioner or referee, if such judgment results in an award to the petitioner," shall be filed in the office of the clerk of the county in which the hearing was held, and, when so filed, shall have the same effect as judgments rendered in causes tried in the Courts of Common Pleas. The bureau was given express authority to initiate an

inquiry of its own in the event of failure of "an injured employe or the dependents of a deceased employe" to file a petition for compensation, and, with the consent of such parties, to file the requisite petition. The jurisdiction of the Pleas "to modify any award of compensation" was also conferred upon the bureau; and it was further provided (paragraph 11, as amended) that the "judgment" of the bureau shall be "final and conclusive between the parties and shall bar any subsequent action or proceeding unless reopened by the said bureau or appealed" as therein provided.

In 1919, the legislature eliminated from the clause in question, then lettered (f), the provision italicized above, permitting a review on the ground of a subsequently increased or diminished incapacity at any time *after,* and only after, the expiration of one year from the time when the agreement or award became effective (*Pamph. L.* 1919, *pp.* 201, 211), and in *Lusczy* v. *Seaboard By-Products Co.,* 101 *N. J. L.* 170, our court of last resort read the clause, so modified, as evincive of a legislative intent to limit the phrase "at any time" to "a modification of the agreement by the parties," and to make the exercise of the function "to review" subject to the period of limitation laid down in paragraph 5 of chapter 149 of the laws of 1918 (*Pamph. L., pp.* 429, 431), as amended by chapter 229 of the laws of 1921 (*Pamph. L., p.* 731), since amended by chapter 280 of the laws of 1931 (*Pamph. L., p.* 708), and in clause (h) of paragraph 23, section III, of the Compensation act, as amended by chapter 93 of the laws of 1919 (*Pamph. L., pp.* 201, 214), since amended by chapter 279 of the laws of 1931 (*Pamph. L., pp.* 704, 707). In thus finding a legislative purpose to limit, and not to extend, the time during which an agreement or award was subject to review, Mr. Justice Katzenbach said, and this seems to be the gist of the holding: "The limiting section of the act having been passed subsequent to the passage of the section providing for a review at any time, and containing a repealer of inconsistent legislation, must control." In view of the change of language, it is an entirely reasonable supposition that the legislature found it impolitic to give a right of review

without limit as to time, and intended to impose the limitation prescribed in the only provisions of the statutes in *pari materia* dealing with the subject, and referred to above. Sound policy ordains that a judgment dispositive of the merits shall have finality after the expiration of a reasonable period allowed for its reopening and review on appeal.

In *Herbert* v. *Newark Hardware Co., supra,* Mr. Justice Parker held that these statutes did not apply to "a contested claim litigated and reduced to judgment, and the judgment paid and satisfied," and that the payment of the judgment "was not such a 'last payment of compensation' in the intendment of the statute, as would support an application to 'review the award' within a year after such payment of the judgment."

This then was the settled judicial construction of the statute under consideration when paragraph 21 (f) was amended in 1931; and we perceive no rational purpose in the amendment, unless it be to permit of a review of a final judgment "within two years from the date when the injured person last received a payment," on the ground of a subsequent increase of the incapacity, or at any time if it has diminished. There is, and then was, a statute of like general purport (though somewhat broader in its operation) applicable to the other class of cases, *i. e.,* where the merits have not been finally adjudicated. *Ecken* v. *O'Brien,* 115 *N. J. L.* 33; *affirmed,* 116 *Id.* 94. Of this more hereafter. A modification of the law was indubitably contemplated. This is fairly to be presumed from the change in phraseology. There is a presumption against useless legislation. A change in the language of a statute, especially after it has had a settled judicial construction, ordinarily implies a purposeful alteration in substance.

We find nothing of substance in the suggested differentiation of a "formal award" from the final judgment. The term "formal award" was introduced into the Compensation act for the first time by the amendment of 1931, *supra;* and this was a recognition of the distinction between formal and informal awards which grew out of the administration of

the law in the compensation bureau. Informal hearings were held to pass upon agreements between the parties; and the like procedure was followed when the bureau intervened, *ex mero motu* or on the application of either party, to effect an agreement between the parties. The term "formal award" was used in contradistinction, and signifies the final judgment in a litigated cause. The statute terms the final determination of the commissioner the "judgment;" it provides that, in the event of an award to the petitioner, "a copy of the judgment of the commissioner, deputy commissioner or referee" shall, when filed with the clerk of the court, have the same effect as a judgment of the Court of Common Pleas. This court so construed the statute in *Ecken* v. *O'Brien, supra;* and it was therein pointed out that, under the provisions of the statutes herein referred to, a like period of time was afforded the employe to petition for additional compensation where liability under the statute had not been litigated and a final adjudication on the merits had not been had. The affirmance of our court of last resort was put upon the ground that the case fell into this latter category. The question of the applicability of the act of 1931, *supra,* where the issue had been litigated on the merits, and a final judgment had, was passed *sub silentio*. See, also, *Granada* v. *D. W. McGee Construction Co.,* 114 *N. J. L.* 89.

The original act plainly conferred the right of review without limit as to time, after the expiration of one year from the making of the agreement or award. The act of 1919, *supra,* was obviously designed to impose a limitation, while the act of 1931, *supra,* extends but yet limits the time for such review.

The final judgment of the bureau is nevertheless *res judicata*. It is, in accordance with paragraph 11, as amended by chapter 229 of the laws of 1921, *supra,* final and conclusive as to all matters comprehended by the determination, subject only to the exercise of the bureau's power to "reopen" the judgment, correction on appeal, and modification by the bureau under the reviewing power for increased or diminished incapacity conferred by the act of 1931, *supra*. See, in this

connection, *Breen Iron Works* v. *Richardson,* 115 *N. J. L.*
305; 180 *Atl. Rep.* 192; *Katz* v. *Zepela,* 10 *N. J. Mis. R.*
258; *affirmed,* 110 *N. J. L.* 14; *Rose* v. *Wagner Construction
Co., 2 Id.* 118. It yet has that desirable and, for all practical
purposes, indispensable attribute of finality. The authority to
review and modify under the statute last cited is addressed not
to the correction or revision of errors in law or in fact residing
in that adjudication, but to the increase or diminishment of
the disability *subsequently* occurring. The judgment is final
and conclusive as to all questions of law and fact thereby deter-
mined, including those involving jurisdiction, the right to
compensation, and the nature and extent of the existing dis-
ability, subject only to the continuing jurisdiction to modify
the award of compensation to accord with a subsequently
occurring increase or diminishment of the incapacity flowing
from the established compensable injury. A *sine qua non* to
the exercise of this continuing jurisdiction is a subsequent
change in the condition of the employe which materially
increases or diminishes the disability. The scheme of these
statutory provisions is to direct the original inquiry to the
extent of the employe's injury and disability at the time of
the rendition of the judgment, and to make that award sub-
ject to modification corresponding with an actual change in
condition occurring thereafter. The statutory review does
not contemplate the undoing of what has been finally deter-
mined. It is a measure designed to do strict justice between
the parties. The spirit of the law is to provide weekly com-
pensation for the disabled employe or his dependents, in the
event that death ensues; and the obvious purpose of this pro-
vision is to permit of a readjustment in the award when war-
ranted by a subsequent change in condition. It is mutual in
its operation; the employer is granted the correlative right
of revision when the incapacity has diminished. The
genius of the provision is the correction of injustice conse-
quent upon the inability of medical and surgical experts to
make an accurate prognosis—to forecast with certainty the
operation of nature's processes; and it is therefore an entirely
reasonable and wholesome measure to effectuate the benefi-

cent object of the statute, *i. e.,* to secure to the injured employe the prescribed compensation for the disability actually suffered. While a petition for compensation for augmented disability is of necessity predicated on the original judgment, it initiates what is essentially a new proceeding based on a new factual situation. A judgment awarding compensation under this statute is, in this respect, unlike a judgment in a common law action for damages for personal injuries. The extent of the disability, in so far as it may have subsequently increased or diminished, or ended, is properly the subject, and the only subject, of review under this clause. This is the full extent and limit of the continuing jurisdiction. A corollary is that the statute is inapplicable where the original adjudication was that the employe had not sustained a compensable injury, as distinguished from injury of the statutory character then found to have been fully compensated.

*Second:* We are of opinion that the prosecutor has sustained the burden of establishing a subsequent increase of incapacity, within the intendment of the statute. In his analysis and appraisement of the evidence, and the conclusions rested thereon, Deputy Commissioner Stahl correctly applied the apposite principles. He found a "progressive increase" of disability, and limited the award to the enlargement setting in after the rendition of the judgment.

There was a sharp divergence in the medical testimony presented by the parties; and, in the final analysis, the essential question is whether prosecutor is a malingerer. There is a strong preponderance of the evidence that he is suffering from chronic tenosynovitis, with attendant restriction of the thumb and first, second and third fingers of the right hand, all consequent upon the original compensable injury found by the bureau. Prosecutor's medical witnesses, four in number, two of whom examined him for the first time on April 16th, 1934, for the purpose of forming a judgment as to the nature and cause of his physical condition, and the extent of his incapacity, were in agreement that his affliction is a genuine tenosynovitis ensuing from the original injury. Their estimates of disability ranged from forty to fifty per cent. of the

use of the hand. Respondent's medical witnesses, two in number, while insisting that there was then, as at the time of the hearing on the original petition, not more than a ten per cent. permanent loss of the use and function of the hand, conceded that there was an apparent increase in disability, but denied its reality to any material extent, and ascribed it solely to malingering. Yet, it was admitted by one that, since the original hearing, there had been an extension of the affected area from the thumb to the first, second and third fingers, resulting in "disability in the hand beyond the thumb," although he said this was "due to prolonged immobilization of the hand." The other, likewise conceding an extension of the disability to the first and second fingers, concluded that "the major portion of this is voluntary." He admitted that if this were not the case, "and if one were to take his [prosecutor's] effort at first as being the extent of his disability, one would certainly give him a disability in excess of [his] original finding of ten per cent. of the hand." He dismissed the "reddened and swollen" condition of the hand as "purely psychogenic * * * a voluntary inhibition which has gotten to the point of creating an apparent change in the hand which does not exist." Acknowledging a change in the contour and color of the hand, he ascribed it to "a circulatory change" due to voluntary restriction, or "holding the hand rigid." He found also a loss of motion of the wrist. which he likewise termed "voluntary." Conceding that there were "apparent changes," he maintained they lacked organic basis; and from this he evolved the theory that prosecutor was malingering. Again insisting that he found no evidence of cellulitis or synovitis, he observed that "one might be inclined to say that there were," and admitted that if petitioner "is not doing it voluntarily, he has better than a third of the loss of the hand." This witness, by the way, agreed that on both examinations the hand was in a splint and bandaged, although he later qualified this statement by the observation that on one of these occasions he thought the hand was free of them. The witness suggested a test that would put this question beyond the realm of conjecture; and it is to

be remarked, in passing, that when the commissioner, noting that prosecutor's "apparent disability" had "greatly increased," proposed that he submit to that test, or to "observation before some impartial physician or physicians" with a view to a "scientific determination" of the question thus raised, respondent's counsel promptly interjected that nothing "can be gained by following" that suggestion.

In the opinion of one of respondent's experts, the asserted absence of "atrophic changes" indicated the claimed increase of incapacity was feigned. But his opinion that this was the determinative, not concurred in by his professional associate, was at variance with the conclusions of the four physicians called by the prosecutor. If they found atrophy to be nonexistent, they did not regard its absence as a conclusive test; they discovered unmistakable symptoms of tenosynovitis. Moreover, this witness held to the view that atrophic change would have ensued from voluntary restriction practiced continuously for a period; and from this he inferred that prosecutor made use of his hand, and indulged in volitional restriction while in the presence of physicians. But there was an entire absence of evidence of such use of the hand. And there was credible evidence that the immobilization was in substantial part due to the splints and bandages applied in the treatment of the hand. These appliances were lightly dismissed by this medical witness as "unnecessary."

The commissioner had the benefit of personal examinations of the hand at the two hearings, separated by a substantial interval of time. His examination at the hearing in the present proceedings disclosed "considerable swelling on the dorsum of the hand as well as a reddened and sweaty appearance on the palmar surface * * * with a decided restriction of flexion of the thumb, first and second finger and partially so in the third finger, all of which resulted in the petitioner's inability to close his hand beyond one-third of the normal range." The Common Pleas judge did not have the advantage of a personal examination of the injured member.

Respondent points to testimony given by the prosecutor tending to show the condition of his hand had not materially

changed between these hearings. But, in view of the medical testimony, and the apparent substantial increase in the disability, the view so expressed by this untutored man, obviously wanting in facility of expression in the English language, is not, as seems to have been thought by the Common Pleas judge, conclusive of this issue. Assuming no volitional restriction or malingering, respondent's physicians concede, as we have pointed out, a substantial growth of disability. At the hearing on the original petition, they measured the existent incapacity at ten per cent., and this was the finding of the commissioner. This constituted a definite adjudication of the incapacity then existing. And the award under review was not designed, in whole or in part, to correct error in that judgment.

The issue therefore resolves itself, in the final analysis, into the question of real or feigned incapacity; and as to this the weight of the evidence is plainly, if not indeed overwhelmingly, in favor of prosecutor. The commissioner correctly found a subsequent enlargement of the incapacity to the extent set forth in the award. The evidence adduced by respondent on this issue did not meet the prescribed legal standard. Compare *Atchison* v. *Colgate & Co.*, 3 *N. J. Mis. R.* 451; *affirmed*, 102 *N. J. L.* 425.

Counsel for respondent rests his argument in part on matters contained in an addenda to his brief labeled "Decision of Deputy Commissioner at First Hearing." This is not properly before us, and therefore cannot be regarded. It was not returned with the writ of *certiorari* as part of the proceedings below. Moreover, the findings and determination in the original proceedings were, pursuant to the statute, incorporated in the judgment entered therein. This was included in the return, and we are remitted to that for the findings in that proceeding. The formal determination or final judgment of the commissioner is, by the statute, the repository of his ultimate findings.

The judgment of the Court of Common Pleas is accordingly reversed, and the judgment of the compensation bureau affirmed, with costs.