NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

ABRAHAM FISCHMAN, PETITIONER, v. JOSEPH FISH &
COMPANY, RESPONDENT.

Decided February 28, 1938.

For the petitioner, *Saul & Joseph E. Cohn* (by *Michael Silver*).

For the respondent, *Newton H. Porter*.

This is a proceeding brought by Abraham Fischman, as petitioner, against the Joseph Fish & Company, as respondent, seeking a review of an award heretofore entered in his favor, and praying for further allowance of compensation on the ground that his incapacity has subsequently increased, pursuant to the provisions of paragraph 21(f) of the Workmen's Compensation act. 2 *Rev. Stat.* 1937, 34:15-27.

\*     \*     \*     \*     \*     \*     \*

Memoranda have been submitted by counsel, the contents of which I have carefully examined.

The award which the petitioner obtained in the earlier proceedings was the result of a fully litigated trial and was based upon the independent findings of Deputy Commissioner Corbin before whom the matter was originally tried. By the terms of the award the petitioner was granted three hundred and thirty-three and one-third weeks' compensation at the rate of $20 per week upon the basis of sixty-six and two-thirds per cent. of total and permanent disability due to mercury poisoning. The deputy commissioner found and determined

from the evidence that the petitioner was in the regular employ of the respondent on April 29th, 1929, and that he had been so employed for a continuous and uninterrupted period of seven or eight years prior thereto, working in the blocking department of respondent's hat factory; that he received wages at the rate of $40 per week; that on the aforesaid date the petitioner became disabled by reason of a compensable occupational disease, to wit, mercury poisoning; and that the exposure thereto occurred during his said employment, and that the disability commenced within five months after termination of such exposure. Expert medical testimony touching on the question of the extent of disability was limited by the parties to one doctor each. Dr. Samuel Greenberg, appearing as a medical expert in behalf of the petitioner, testified that in his opinion the petitioner was suffering disability as a result of mercury poisoning to the extent of one hundred per cent. of total. On the other hand, Dr. Ambrose F. Dowd, testifying for the respondent, expressed an opinion that petitioner's disability due to mercury poisoning amounted to only sixty-six and two-thirds per cent. of total and permanent disability, conceding, however, that the actual disability was somewhat greater but due to other causes which he believed were unrelated to mercury poisoning. It is quite apparent that the deputy commissioner, upon arriving at his conclusion in awarding compensation to the petitioner on the basis of sixty-six and two-thirds per cent. of total disability, chose to adopt the medical viewpoint of the respondent's expert. Sitting in the capacity of a statutory tribunal he had, of course, such prerogative as a trier of the facts.

Since the previous award was the result of independent findings of the bureau based upon the evidence in the case, the judgment therein is final and conclusive upon the parties, and, under the ruling in *Tucker* v. *Bellramo*, 117 *N. J. L.* 72; 186 *Atl. Rep.* 821, is subject only to continued jurisdiction under paragraph 21(f) to modify or enlarge the award upon the ground of subsequent increased or diminished disability. The sole question in issue, therefore, is whether there

has in fact been an increase in the degree of disability attributable to mercury poisoning since the entry of the first award on January 2d, 1931. The burden of proof rests upon the petitioner to establish such increase.

The petitioner, appearing as a witness in his own behalf, testified that his disability has grown materially worse since the first trial. He testified that the tremors and shakes are so marked at the present time that he is unable to dress or undress himself; that he is unable to hold a knife and fork while eating because of the constant trembling of his hands and as a result is compelled to limit his diet to liquid food by sucking same through a glass tube; and that he is unable to read because of the tremors and shaking of his head. He further testified that at the time of the first trial, although he suffered from tremors of his entire body, hands and legs, they were not nearly as severe as they are to-day; that he was then able to care for himself without aid; that he was able to read and to self-administer to his personal needs; and that he was able to use his two hands in eating in the conventional manner with knife and fork; and that to-day he is completely helpless and must depend upon others to assist him.

Dr. Samuel Greenberg, the physician who had testified in behalf of the petitioner at the original trial, and Dr. Henry A. Davidson appeared as medical experts for the petitioner.

Dr. Greenberg testified that the petitioner is suffering from mercurialism to the extent of one hundred per cent. total and permanent disability. In making a comparison of his earlier physical findings in 1931 at the time of the first trial with those found upon his recent examination, Dr. Greenberg testified that the tremors of petitioner's hands, head and body are markedly more pronounced to-day; that there has been a progressive increase in the symptoms attributed to mercury poisoning; and that the petitioner's condition, contrasted with what it was at the first trial, is much worse at the present time.

Dr. Henry A. Davidson testified that he examined the petitioner for the first time on October 9th, 1935, at which time

he found him suffering from paralysis agitans, typical of a Parkinsonian syndrone. He ascribed the condition as due to mercury poisoning, being a brain lesion in the area of the basal ganglia, with an involvement of the entire central nervous system. He expressed an opinion that the petitioner's incapacity is equivalent to one hundred per cent. of total and permanent disability.

The respondent produced two medical experts, Dr. Ambrose F. Dowd, who testified at the first trial, and Dr. Otto Lowy.

Dr. Dowd testified that he had made two physical examinations of the petitioner, one on November 7th, 1929, and the other on December 5th, 1936. Upon the first examination he testified that he found the petitioner was suffering from arteriosclerosis, chronic myocarditis, and mercury poisoning; that these three conditions operating together have caused a disability to the petitioner to the extent of one hundred per cent. of total; but that the disability produced by mercury poisoning alone was equivalent to sixty-six and two-thirds per cent. of total. Dr. Dowd testified that his findings on the second examination were essentially the same as those of the earlier one; that petitioner's disability was no greater; and that the mercurialism had not increased since the first trial.

Dr. Lowy, who examined the petitioner for the first time on December 5th, 1936, testified that he found him suffering from arteriorsclerosis, myocarditis, and Parkinson syndrome due to mercury poisoning. He estimated the petitioner's disability as one hundred per cent. of total, allocating the various conditions as follows: Sixty-six and two-thirds per cent. of total and permanent disability due to mercury poisoning, and thirty-three and one-third per cent. of total and permanent disability due to arteriosclerosis and myocarditis.

Because of such widely conflicting opinions of the medical experts testifying for the respective parties, in order to arrive at a determination of the question of whether the petitioner suffers from increased disability due to mercury poisoning, it becomes my difficult task to adopt the view which seems more credible and weighty. In doing so, I feel that Dr. Greenberg and Dr. Dowd are the only two medical experts

competent to testify as to petitioner's condition at the present time as compared with his condition at the time of the first trial. See *Vincent Borzi* v. *J. Rich Steers*, 14 *N. J. Mis. R.* 553; 186 *Atl. Rep.* 723. While Dr. Dowd's testimony is to the effect that there has been no increase of disability due to mercury poisoning, Dr. Greenberg has testified to the opposite effect, describing in great detail marked changes in the symptoms referable to mercury poisoning. In addition thereto petitioner's testimony is strongly indicative of a progressive and marked increase in the degree of disability due to mercury poisoning since the earlier trial and award. Accordingly I conclude that the decided weight of the medical testimony leans toward the view as expressed by the opinions of petitioner's medical experts, and I find as a fact that the petitioner's disability due to mercury poisoning has increased since the entry of the earlier award on January 2d, 1931, and that his present disability as a result thereof is equivalent to one hundred per cent. of total.

The statute prescribes no standard of age or of physical fitness to which an employe must conform in order to come within its benefits and operation. This rule is ably stated by Mr. Justice Swayze, speaking for the Supreme Court in the case of *Bateman Manufacturing Co.* v. *Smith*, 85 *N. J. L.* 409; 89 *Atl. Rep.* 979, as follows:

"The total disability is, to use the words of the act, 'a disability total in character,' words which necessarily refer to the character of the disability considered in itself, and not to the effects produced, which have no fixed character but vary with the peculiarities of each individual. Were it otherwise, we should have to determine what kind of a man was meant by the legislature to receive the standard statutory compensation, whether a young and vigorous man or an old and decrepit man, or some one between the two extremes; and we should then have to vary the award in each individual case, and perhaps never find the typical normal standard."

While the petitioner was along in years at the time he contracted mercury poisoning, suffering from a mild form of arteriosclerosis and myocarditic changes, quite common

in men of his age, these latter conditions did not interfere with his ability to perform his work as a hatter in the slightest degree. His impaired health and total incapacity for remunerative employment are due entirely to the toxic effect of mercury upon his entire central nervous system. He is a striking illustration of the many casualties of our modern industries, a victim of the hatters' trade which he followed over a period of forty years.

I find, therefore, that the petitioner is entitled to an award of compensation upon the basis of one hundred per cent. of total and permanent disability, being the equivalent to four hundred weeks at the rate of $20, less three hundred and thirty-three and one-third weeks heretofore paid pursuant to the terms of the previous award. This award shall be subject to such further consideration upon the expiration of the four hundred-week period as the case may warrant under the provisions of paragraph 11(b).

\*    \*    \*    \*    \*    \*    \*

JOHN J. STAHL,
*Deputy Commissioner.*