Essex County Court of Common Pleas.

JOHN BELANOWITZ, PETITIONER, v. TRAVELERS INSURANCE COMPANY, A CORPORATION, RESPONDENT.

Decided June 13, 1939.

For the petitioner, *David Roskein* (*Walter X. Trumbull*).

For the respondent, *James J. Skeffington.*

Hartshorne, C. P. J. This workmen's compensation rule hinges on two questions, first a procedural one, as to the imposition of liability on the insurance carrier after same has already been fixed as to the employer; second, a substantive one, as to whether the functional disability test, applicable in case of accidental injuries, also applies to compensable occupational diseases.

A brief statement of the facts, in chronological order, will be helpful. During 1933 the workman-petitioner was employed by the A. Fishman Hat Company, Inc., as a result of which he was exposed to mercury poisoning, a compensable occupational disease, which he contracted on or about June 12th,

1933. He thereupon wanted to quit work, but was induced by his employer to remain on the job due to a rush of orders. It is in dispute whether or not he worked full time thereafter, but it is admitted that he was forced to quit work altogether November 3d, 1933. Meanwhile, the policy of the respondent here, the Travelers Insurance Company, which covered Belanowitz in his employment, had expired, to wit, on October 1st, 1933. Subsequent to his quitting work, the mercurial poisoning, contracted as above, so affected the workman that he became totally and permanently disabled.

Now, for the procedural facts: On compensation proceedings by the workman against his employer only, a determination and award were entered June 4th, 1934; "that the *disability*, as the result of his [Belanowitz's] contraction of the occupational disease of mercury poisoning, *commenced on or about the month of June, 1933*, but even though he was disabled from that time until November 3d, 1933, when he finished, and beyond that up until November 21st, 1933, that inasmuch as he was employed during this period of time and paid his wages [piece work earnings], he is not entitled to any temporary compensation for that period." A separate award for permanent disability was made of twenty-five per cent. January 17th, 1939, and after the employer had gone into bankruptcy, another award was entered on a petition for increased compensation, filed against the employer only, by a different deputy commissioner than the one who made the first award, finding one hundred per cent. total permanent disability, and also finding that petitioner was, in fact, disabled from working for certain periods during June, 1933, due to this mercurial poisoning. Finally the present petition is filed against the insurance carrier only to "enforce the provisions" of the insurance contract for the benefit of the employe "upon the failure of the employer to make adequate and continuous compensation payments." *R. S.* 34:15-84. This petition, while referring to both the above awards, relies particularly upon the second, the respondent's answer thereto setting up the first as *res judicata* as to petitioner's disability up to the time of the entry of the first award. Such is the situation in outline.

In the procedural aspect, the respondent carrier first attacks the pending petition, contending the above statute on which it is based to be unconstitutional and, second, asserts that in any event the last award cannot be enforced against it, in so far as it is inconsistent with the first, as the first is *res judicata* to the extent above stated. As to the constitutional question, this court would seem concluded by the decision of the Supreme Court in *Harvender* v. *U. S. Fidelity and Guaranty Co.,* 8 *N. J. Mis. R.* 634; 151 *Atl. Rep.* 446. Respondent insists, however, that the decision the same year by the Court of Errors and Appeals in *O'Banner* v. *Pendlebury,* 107 *N. J. L.* 245; 153 *Atl. Rep.* 494, of a similar provision of the Workmen's Compensation act, is so inconsistent with the Harvender case as to impliedly overrule it. An examination of the differing statutory provisions construed in the two cases clearly reveals the reason for the difference in the result. In the O'Banner case the statute makes no provision whatever for notice, either direct or constructive, to the party sought to be affected by the proceedings in question. In the instant situation, on the other hand, the statutory provisions in that regard are explicit, the net result being that the employer is created practically as the carrier's statutory agent for service of process, nay, more, that proceedings against the employer are practically proceedings against the carrier. "Notice to or knowledge of the occurrence of the injury on the part of the employer shall be deemed notice or knowledge, as the case may be, on the part of the insurance carrier; that jurisdiction of the employer shall, for the purpose of this article, be jurisdiction of the insurance carrier, and that the insurance carrier shall in all things be bound by and subject to the orders, findings, decisions, or awards rendered against the employer for the payment of compensation. *R. S.* 34:15-85. This is all additional to the provisions that the insurance contract shall be construed to be for the benefit of the employe, and that in the event of "death, insolvency, or bankruptcy of the insured employer or upon his assignment for the benefit of creditors, the insurance carrier shall immediately become directly liable," to the employe. *R. S.* 34:15-82, 83, 86. No constitutional reason appears, why, if one desires to engage in

a business affected with a public interest, he may not be required to appoint an agent or an *alter ego* of his own choice through whom, or against whom, proceedings adverse to him may be taken. The constitutional objection thus falls.

As to the further procedural question concerning the effect to be given the two above awards, in view of their inconsistency as to the incidence of petitioner's occupational disability, we must bear in mind the fact that the purpose of the pending petition is to enforce the employe's rights under the insurance contract, as well as the fact that the carrier is bound by the awards rendered against the employer. *R. S.* 34:15-84, 85. For this reason this court must consider what those rights in fact are. This court must thus consider both awards, not simply the one the petitioner may select. There is much, therefore, to be said for respondent's contention that the first award is *res judicata* as to the issues then and there decided, and that such award, standing unappealed from, renders a subsequent differing decision a mere form of words, as to such differing point where such subsequent decision was not consented to by the other side as a re-hearing, but was an independent proceeding. This, then, applies to the issue of incapacity for work in June of 1933, as variantly decided in the two above awards. *Tucker* v. *Beltramo, Inc.,* 117 *N. J. L.* 72; 186 *Atl. Rep.* 821; *affirmed,* 118 *N. J. L.* 301; 192 *Atl. Rep.* 62; *Mangani* v. *Hydro, Inc.* (*Court of Errors and Appeals*), 119 *N. J. L.* 71; 194 *Atl. Rep.* 264; *Cirillo* v. *United Engineers* (*Court of Errors and Appeals*), 121 *N. J. L.* 511; 3 *Atl. Rep.* (2d) 596; *Drake* v. *C. V. Hill & Co.* (*Court of Errors and Appeals*), 117 *N. J. L.* 290; 187 *Atl. Rep.* 637; *Boyko* v. *Federated Metals,* 11 *N. J. Mis. R.* 82, 85; 164 *Atl. Rep.* 462.

Since we are thus bound by the first award, to hold that no actual incapacity for work existed prior to the termination of respondent's insurance policy, we now turn to the meritorious question, of whether such occupational incapacity is the sole basis of compensability in occupational disease cases, or whether functional disability is sufficient as well, as it is in cases of accidental injury. Clearly disability, as distinguished from the mere contracting of the disease, is the test.

"When the disability occurs is the time fixed for compensation, and, as in the case of an accident, disability occurs either when death or incapacity occurs and not when the first quantities of poison which may prove of no effect, are absorbed." *Textileather Corp.* v. *Great American* (*Court of Errors and Appeals*), 108 *N. J. L.* 121; 156 *Atl. Rep.* 842. But the real question is whether or not *either* functional *or* occupational disability are sufficient to call for compensation. Both clearly are in the case of accident. *Everhart* v. *Newark Cleaning and Dyeing Co.* (*Court of Errors and Appeals*), 119 *N. J. L.* 108; 194 *Atl. Rep.* 294; *Burbage* v. *Lee,* 87 *N. J. L.* 36; 93 *Atl. Rep.* 859; *De Zeng Standard Co.* v. *Pressey,* 86 *N. J. L.* 469; 92 *Atl. Rep.* 278; *affirmed,* 88 *N. J. L.* 382; 96 *Atl. Rep.* 1102; *Sutkowski* v. *Mutual Chemical Co.,* 115 *N. J. L.* 53; 178 *Atl. Rep.* 71. Moreover the court in the Textileather case alludes, as above quoted, to the fact that the disability criteria in disease cases are the same "as in the case of an accident." So the court in the Textileather case cannot have intended to exclude functional disability as an alternative criterion to occupational disability. Clearly, the reason for the court's not alluding to functional disability in the Textileather case was the fact that the functional issue was not presented. The court merely disposed of the test that was presented, *i. e.,* occupational disability, but in nowise stated that this test was exclusive of all others.

That this is the true situation is definitely indicated by the decision in *Sutkowski* v. *Mutual Chemical Co., supra,* decided subsequent to the Textileather case, where the court expressly held a mere functional disability, in the absence of all occupational disability, to be compensable in an occupational disease case. There petitioner's septum was affected by chrome poisoning. "This condition is the result of a compensable occupational disease * * *. It unquestionably resulted in a functional loss, permanent in quality. * * * This is a compensable disability, even though Sutkowski's capacity to render the service at which he was engaged was not thereby impaired, or his earning power diminished. The test is not impairment of earning capacity; it is rather the 'loss of physical function which detracts from the former

efficiency of the body or its members in the ordinary pursuits of life,'" citing cases. *Sutkowski* v. *Mutual Chemical Co., supra.*

Further support of this sensible rule, laying down the same criterion in both accident and compensable disease cases, is found in the statute itself. "All provisions of this article and article 3 of this title [34:15-36, *et seq.*] applicable to claims for injury or death by accident, shall apply to injury or death by compensable occupational disease [with exceptions not here applicable]." *R. S.* 34:15-35. Indeed, this very case presents a clear reason why functional, as well as occupational, disability should apply to disease cases. For the workman here claims, and his employer admits, that after the workman not only contracted the disease, but was, in fact, affected by it, he sought to quit work, but was persuaded by his employer to remain to help out in the rush season. In other words, if the employe had followed his own desires and quit, the carrier would now be held responsible under the rule now contended for by it. But because the workman sought, at the expense of his own health, to help out his employer, he is now to be deprived of recovery. This would simply put a premium on being a quitter.

The prayer of the petition will be granted and a determination may be entered accordingly.