New Jersey Department of Labor,
Workmen's Compensation Bureau.

VINCENZO CRECCO, PETITIONER, v. DALEY EXCAVATING
COMPANY, RESPONDENT.

Decided June 28, 1944.

For the petitioner, *David Roskein.*

For the respondent, *Cox & Walburg.*

A formal petition having been filed in the above case on August 9th, 1943, claiming compensation under *R. S.* 1937, title 34, chapter 15; *N. J. S. A.* 34:15–1, *et seq.;* and an answer being duly filed; and the parties having appeared before me at Newark, May 18th, June 15th and June 16th, 1944; and testimony being taken in my presence and in the presence of counsel, I find and determine as follows:

Petitioner alleged that he suffered an accident April 30th, 1941, while working for the respondent; that the nature thereof was adjudicated by an order of this Bureau on October 21st, 1941, but that petitioner's incapacity had increased.

In its answer, the respondent contended that the payments of compensation made under a formal judgment of this

Bureau, dated October 16th, 1941, were proper and adequate compensation for the injury petitioner sustained as a result of the accident petitioner suffered while working for the respondent.

In support of his allegations, the petitioner testified that on September 10th, 1942, in his backyard at 59 Naples Avenue, Belleville, he took a step-ladder out into the yard for the purpose of picking figs from a fig tree. He stated that it was an eight-foot step-ladder and he was six steps or approximately six feet up the ladder. He had been on the ladder about eight or nine minutes and had half a pail full of figs. The ladder was being held by his wife and another woman. He was not holding on to anything and the pail was on a hook. He said that while in this position, engaged in this activity he had a sharp pain in his left knee and fell sidewise. When he fell, he struck the ground and was injured. In attempting to describe the pain, he used various descriptions, sometimes stating that he never had a pain like this one before, that it was a sharp pain, but a different one. Another time, he said that he had the pain before and it would come and go. Another time, he said it was continuous. He also remarked it was raining and change of weather would give him a sharp pain. He claimed that the pain caused him to fall from the ladder. He also stated that before he went on the ladder, he had a pain. He then described briefly the medical treatment which was rendered to him and the difficulties which he has. His wife testified as to the episode and more particularly as to holding the ladder. He said that the pail in which the figs were being put by her husband as he was up on the ladder was hung on a limb to the right side.

A Mrs. Di Martino testified she was upstairs and was asked if she would come out and hold the ladder. She testified as to the circumstances and the fall.

By consent, petitioner placed in evidence certain medical and hospital records and X-rays. Dr. Max Kummel testified from examinations made by him. He testified as to findings from examination made by him July 14th, 1941, and September 30th, 1941, in connection with an injury sustained while petitioner was working for the Daley Excavating Company.

respondent. He desccribed the conditions which he found at that time and expressed an opinion that there was a disability of 12½% of the leg by reason of the conditions in the knee, as described. He confirmed the testimony which he gave before this Bureau in connection with the trial held October 16th, 1941, resulting in a determination of facts and rule for judgment, dated October 21st, 1941. He also testified as to examinations made in August and October, 1943, and described the conditions which he then found. He diagnosed the conditions which he then found as being a comminuted inter and sub-trochanteric fracture. He also identified and interpreted some x-rays of the pelvis and hips and estimated the disability. He also expressed an opinion as to causal relationship.

Dr. Stockfish, neurologist, testified from an examination made by him in May, 1944. He enumerated his findings and gave his opinion as to disability and causal relationship.

Respondent produced Dr. C. A. Beling, who examined the petitioner September 8th, 1943. He gave his various findings, more particularly, with reference to the left knee and left hip. He expressed his opinion as to causal relationship and disability.

I have not enumerated in detail the testimony, except to refer to the pertinent portions thereof. In the first place, the determination of facts and rule for judgment, dated October 21st, 1941, is *res judicata*. It is final and conclusive as to all questions of law and fact comprehended by the judgment, including the question of jurisdiction, the right to compensation, and also as to the nature and extent of the existing disability. *Drake* v. *Hill,* 117 *N. J. L.* 290; 187 *Atl. Rep.* 637; *Tucker* v. *Beltramo, Inc.,* 117 *N. J. L.* 72; 186 *Atl. Rep.* 821; *De Marco* v. *McGraw,* 13 *N. J. Mis. R.* 856; 181 *Atl. Rep.* 639; *De Pasquale* v. *Contalvi,* 126 *N. J. L.* 136; 18 *Atl. Rep.* (2d) 840; *Drexl* v. *Jurgensen,* 19 *N. J. Mis. R.* 643; 22 *Atl. Rep.* (2d) 816.

In accordance with the said judgment, the petitioner suffered a disability to his left leg to the extent of 10% thereof and was temporarily disabled to August 7th, 1941. Apparently, thereafter the petitioner engaged for a brief period of

time in employment, and although not industrially employed, did get about without any episodes involving a giving way of his leg.

In connection with the judgment rendered, it appears that the disability allowed in the aforesaid judgment was in the nature of a restriction of extension of the left knee, to the extent of 10%, and a slight restriction of flexion and complaints of tenderness. I was careful to note the findings of Dr. Kummel in that aspect of the matter, to see whether or not there was some specific condition which would make reasonable the petitioner's statement that he fell because of a hard or sharp pain in his knee.

In my careful consideration of the doctor's testimony, not only did it appear that at most there were but a slight restriction of flexion, tenderness and a complaint of pain in September, 1941, but when the doctor examined on two occasions following the ladder episode, there were no findings with respect to the knee. The diagnosis involved only the hip region. The x-rays which were taken in preparation of the petitioner's case were only of the hip region, and the disability which the petitioner presented was based upon the comminuted fracture in the hip region. This is confirmed by the testimony of Dr. Beling, who made a specific examination of the petitioner's left knee and checked with an x-ray. The x-ray findings in 1943 apparently revealed the same condition as the x-rays which were used by the petitioner in 1941 and testified to by Dr. Kummel. At the examinations following the ladder episode, there was no new or acute condition found by Dr. Beling, and Dr. Kummel testified as to nothing specific involving the left knee.

Dr. Beling more concisely found that there was no swelling or areas of tenderness about the left knee and found what apparently was the slight limitation which petitioner had and for which he was awarded disability under the previous judgment. My interest in that phase of the case was because after hearing the testimony of the petitioner and the two witnesses whom he produced, it left me very much in doubt as to the credibility of that testimony. The doubt arises from the unreasonableness of the testimony. The petitioner while

on the ladder and not holding on to anything had picked enough figs to fill half a pail. The ladder once placed had not been moved. Is it true that the petitioner did not have to extend himself and do some reaching to pick enough figs to fill the pail?

Another question which came to my mind after hearing the lay testimony was a consideration of the fact that at no other time had the petitioner had such pain in his knee that he fell. It seems strange to me that the pain came at a time when he was on this eight-foot step-ladder. Or, viewed from another perspective, how is it if the petitioner had pain with his knee, that he nevertheless undertook to pick figs while six feet up on an eight-foot step-ladder? Certainly, by doing so, he created a hazard for himself.

Without passing upon the reasonableness of the petitioner's factual testimony, and without determining the serious question of credibility which is obviously a factor to be considered, I, however, am of the opinion that there is a legal problem, the resolution of which is unfavorable to the petitioner under the circumstances in this particular case.

In this particular case, the testimony as I have indicated above clearly demonstrates that the petitioner's now existing disability is the result of a fracture in the region of the left hip. There is no testimony that there is any change or any findings in any way relating the disability of the petitioner to anything, except the collision of his body with the ground. In other words, the disability is the result of the fall from the eight-foot step-ladder.

One of the medical witnesses expressed the opinion that the disability would not have occurred if the petitioner had not been up on the ladder. There are a number of decisions of our Appellate Courts concerning themselves with the responsibility for disability where there are two separate episodes involved. Some of the cases involve two separate episodes during employment.

This particular case is one wherein the event which caused rather extensive disability occurred in the petitioner's own backyard, and he seeks therefore to charge a former employer, with whom he had a former accident, as being the responsible

party. He seeks to do so on the theory that he had a prior accident with this former employer on April 30th, 1941, and as a result of that accident, suffered an injury to his leg, more particularly, the knee. He claims that the fall from the ladder was caused by reason of a particular pain at the site of the knee which was previously injured. As previously stated by me in reference to the medical testimony adduced, there is nothing to account for such an episode. There was no fracture, the objective findings were minimal. In fact, there is no mention of the knee specifically by the petitioner's doctors on their recent examinations after the ladder episode. I have, therefore, nothing before me in the testimony to reasonably account for the man's fall from the ladder, except his statement that he had a pain and this caused him to fall. And yet, is that sufficient to charge his previous employer with responsibility? This ladder episode occurred a year and a half after the industrial accident. In that interim, apparently petitioner had never had any pain which caused him to fall. In my opinion, the circumstances are not such as to impose liability to respond in compensation upon the respondent, who was the employer in April, 1941.

Referring to the legal problem and its resolution, I am of the opinion that in consideration of the principles enunciated by our Appellate Courts, the respondent is not here liable. One of the earliest cases involving two accidents is that of *Selak* v. *Murray Rubber*, 8 *N. J. Mis. R.* 838; 152 *Atl. Rep.* 78; *affirmed,* 108 *N. J. L.* 548; 159 *Atl. Rep.* 93. It was there stated:

"In the present case, the testimony is positive that boney union was far from complete and that because of this weakness, due to the primary industrial accident, a condition existed which caused a secondary event to prolong the disability."

In the instant case, there is not even any reference to disability in the knee found in the examinations of 1943, except a confirmation that there existed the same condition which was before the court at the trial in October, 1941.

In the case of *Lazzio* v. *Primo Silk,* 114 *N. J. L.* 454; 177 *Atl. Rep.* 251, 253, liability was imposed upon the employer

"because of the fact that the original injury had not completely healed at the time of the second accident."

In the more recent case of *McDonough* v. *Sears Roebuck*, 127 *N. J. L.* 160; 21 *Atl. Rep.* (*2d*) 314, 315, it was stated:

"In short, the inquiry is whether the injury is reasonably attributable to a proximate cause set in motion by the accident, rather than some other agency."

So, also in *Randolph* v. *Du Pont*, 130 *N. J. L.* 354; 33 *Atl. Rep.* (*2d*) 301, 302, it was stated:

"If a reasonably prudent person innocently aggravates the harmful effect of the original injury, the original wrongful cause continues and accomplishes the final result."

Lastly, a study of the recent case of *Reynolds* v. *Passaic Valley Sewage*, 130 *N. J. L.* 437; 33 *Atl. Rep.* (*2d*) 595, satisfies me that the rule there adopted imposes the responsibility for the injuries which petitioner sustained upon himself, and not upon his former employer. Under the testimony in the instant case, the fall which the petitioner had would not have carried the consequences which it did, had the petitioner himself not gone up on this eight-foot stepladder to pick figs in his own backyard. His actions had subjected him to a special danger, and from the testimony of his own witnesses, the injury resulted from his fall from the height at which he had placed himself and the manner in which he was undertaking to pick the figs.

My conclusion is that there was no involvement to or injury in the left knee following the ladder episode of September, 1942; that the petitioner by his own actions had placed himself into a hazardous position, and that solely because of this hazardous condition, had he suffered the disability which he now presents. He had placed himself in this hazardous position not by reason of any industrial occupation, or because industrial employment had required him to engage in the particular activities of picking figs. He had done this of his own volition and as a purely personal matter, and had thus created the hazardous situation which was the cause of sustaining the disability which he now has. In my opinion, the disability claimed is not the result of an injury which was reasonably attributable to a cause set in motion.

by his industrial accident of April 30th, 1941, but rather to a combination of circumstances which the petitioner himself created for his own personal desire.

I, therefore, conclude that the petition must be dismissed.

\*        \*        \*        \*        \*        \*        \*

HARRY S. MEDINETS,
*Deputy Commissioner.*