VERONICA WEISENBACH, PETITIONER-PROSECUTOR, v. BOROUGH OF NEW MILFORD, RESPONDENT-DEFENDANT.

Submitted January 15, 1946—Decided September 17, 1946.

Before Justices DONGES, HEHER and COLIE.

For the prosecutor, *Hein & Smith* (*Clyde A. Bogert* and *Seymour A. Smith*).

For the defendant, *Walter H. Jones.*

The opinion of the court was delivered by

HEHER, J.    On November 7th, 1941, one Thomas J. Weisenbach suffered a fatal stroke while in the pursuit of his service as a member of the volunteer fire department of the defendant municipality; and the question for decision is whether his dependents have established by evidence that his death was the result of an accident which arose out of and in the course of his employment within the intendment of *R. S.* 34:15–7, *et seq.*    The Compensation Bureau resolved the

issue in the affirmative; the Bergen Common Pleas, in the negative. The Bureau found that the fatality was the consequence of a coronary occlusion arising from the "physical strain and exertion and the general excitement and activity incident" to decedent's "answering his call of duty." We concur in this latter finding.

These are the essential facts: Weisenbach was a baker by trade, and was so employed on the day in question. He arrived home, after his day's work, between 4:30 and 4:45 P. M. He read a newspaper until 5:45 P. M., when he had dinner. Thereafter, he returned to the living room, removed his shoes and, in the company of his wife, listened to a radio broadcast until approximately 6:45 P. M., when the fire whistle was sounded. He hurriedly put on his shoes, directed one of the sons to procure his coat hanging in the cellarway, and hastened there himself when the son returned with the wrong garment. He ran from the house and drove to the fire station in his own automobile. He parked the vehicle fifty or sixty feet from the fire house, and "ran" or "trotted" to and boarded the fire truck. The testimony is in conflict as to whether the truck was in motion when Weisenbach took his place on the rear platform of the vehicle; but this divergence does not in our view concern a determinative factor. After the truck had proceeded nine or ten blocks, Weisenbach complained to a fellow-fireman of difficulty in breathing, and when it was found, almost immediately thereafter, that he was on the verge of collapse, the vehicle was brought to a halt and he was transferred to the automobile of another fireman responding to the fire call for conveyance to a physician. He died on the way. Weisenbach was thirty-eight years of age, and apparently had been in sound health before the fatal attack. There is no evidence of a prior heart ailment and no history of serious illness.

First, it is argued on behalf of the employer that it does not "conclusively appear" from the evidence that the cause of death was a coronary occlusion; and it is suggested that the causation was not definitely determinable without an autopsy, and opinion evidence not based thereon is too speculative for judicial recognition as a basis for judgment. But it is not

requisite that there be conclusive proof of the factual proposition thus affirmed. The standard of proof is probability rather than certainty. The burden of proof is sustained if under the evidence the tendered hypothesis becomes a rational inference, *i. e.*, an inference based upon a preponderance of probabilities according to the common experience of mankind. *Gilbert* v. *Gilbert Machine Works, Inc.*, 122 *N. J. L.* 533.

The evidence here leads irresistibly to the inference of an acute coronary occlusion due to a thrombosis as the cause of death. There is no basis in the proofs for any other conclusion. Dr. Kaufman, an experienced cardiologist summoned by prosecutor, was quite firm in the view that the circumstances plainly indicated "an acute coronary occlusion as the result of a coronary thrombosis," *i. e.*, a blood clot formed within the coronary artery. Neither of the cardiologists called by defendant expressed an opinion *contra;* indeed, they were not interrogated on this point. Seemingly, they assumed that such was the cause of death, although denying it had a causative relation to the employment. And we know from experience that a heart stroke is the frequent cause of sudden death.

And we are of opinion that a causal relationship between the thrombosis and the employment has likewise been established by a clear preponderance of the evidence. In all human likelihood, the service was a contributing proximate cause of the fatal heart attack. The proofs are persuasive of physical exertion beyond the ordinary and emotional excitement, in combination, as the reasonably probable source of a coronary thrombus which occasioned the fatal closure of the coronary artery. Quite likely, there was a pre-existing arterial impairment arising from disease; but this is not a determinative circumstance if, but for the trauma, the fatal stroke would not have ensued. *Bernstein Furniture Co.* v. *Kelly*, 115 *N. J. L.* 500; *Furferi* v. *Pennsylvania Railroad Co.*, 117 *Id.* 508; *Molnar* v. *American Smelting & Refining Co.*, 127 *Id.* 118; *affirmed*, 128 *Id.* 11.

The municipality points to evidence that the decedent's labors after the sounding of the fire alarm were unhurried and devoid of excitement, and that, after alighting from his automobile near the fire house, he walked to the fire truck and

took his place upon the platform before the vehicle was put into motion. We doubt that this is the standard that obtains in defendant's fire department. It is one that makes for high insurance rates. Firemen do not walk to fires. Leisurely service is not characteristic of the fireman once the alarm is given. Even the bystander, stirred only by curiosity or a flair for drama or excitement, moves with hurried step, very often on the run, in the wake of the speeding fire apparatus to the scene of the fire. We do not credit this testimony; it, too, is contrary to common experience and is highly improbable.

On this issue, also, the opinion evidence strongly preponderates in favor of prosecutor. Dr. Kaufman testified that the four principal contributing causes of a coronary thrombosis are "exertion, emotional factors, a marked effect in the blood pressure, or certain direct injuries to the chest wall itself;" and that here it is "reasonably probable" that the undue physical exertion and the emotional agitation attending the summons to fire duty precipitated a coronary occlusion. The cardiologic opinion adduced by the municipality is not of countervailing quality. These specialists were content to say they entertained the view expounded by a Dr. Masters, that a coronary occlusion cannot result from "undue exertion or excitement." Their testimony is not convincing. It is at odds with the strongly preponderant scientific view; and it would seem to be at odds with common experience. Fire service has its hazards for one with a cardiac deficiency. Mere coincidence is not a permissible deduction in the face of evidence which, according to the teachings of long experience, demonstrates a causal relationship. It is a concept that vanishes in the light of a reasonably probable explanation *contra* that excludes pure conjecture; such is the principle that guides one's judgment in the everyday affairs of life.

The judgment of the Common Pleas is accordingly reversed, and the judgment of the Compensation Bureau is affirmed, with costs.