[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 3 
Petitioner, Doshka Torbyn, widow of Miki Torbyn, appeals from the judgment of the County Court of Middlesex County reversing the judgment of the Workmen's Compensation Bureau awarding compensation for permanent disability to decedent.
The procedural and factual situations in this case are so involved that it becomes necessary to discuss them at some length. Miki Torbyn, while employed by the South River Sand Company as a steam shovel operator, on January 4, 1933, was struck in the head, over both parietal bones, by a heavy digger's crane, knocking him off a platform to the ground, approximately 20 feet below, rendering him unconscious, from which he suffered lacerations of the head and injuries to his leg, shoulders and body. Shortly thereafter, he was seized with acute headaches, dizzy spells and hallucinations.
On May 25, 1933, he filed a Workmen's Compensation petition and, after a hearing on July 12, 1933, received an award for temporary disability of 12 weeks. The decedent never accepted this award, but on January 4, 1934, through new counsel, filed a petition for permanent disability. Respondent filed an answer to this petition alleging the prior award to be res judicata.
On May 16, 1934, decedent filed a further petition alleging that "the incapacity resulting from the accident * * * has increased subsequent to the date of the said award." Respondent filed an answer on June 2, 1934, asserting the same defenses as set forth in the answer to the January 4, 1934, petition, adding that the Workmen's Compensation Bureau had no further jurisdiction over the matter.
On November 20, 1934, respondent gave notice that on December 26, 1934, it would move for a dismissal of the petition for lack of prosecution. The order of dismissal was entered on January 31, 1935, "without prejudice to the legal rights of the petitioner." In view of the fact that we hereinafter hold that the supplemental petition filed by decedent *Page 5 
on May 16, 1934, was outstanding, it becomes unnecessary to discuss and decide the validity of the order of dismissal.
During the many months following Torbyn's injury, a marked change in his behavior and personality took place. He became threatening, wept, screamed, threw dishes and articles of furniture in his frequent fits of violence, and dug in the coal bin of his home for the body of the Lindbergh baby, whom he thought he had kidnapped. On March 18, 1935, Torbyn was committed to the State Hospital for the insane at Marlboro, where he died on April 21, 1944.
Subsequent to her appointment as guardian of her husband on December 10, 1937, payment of the temporary disability award was made to Doshka Torbyn.
On August 20, 1942, Doshka Torbyn, as representative of Miki Torbyn, filed a petition for compensation, to which respondent filed an answer, denying the allegations thereof and alleging that since it was filed more than two years after the date of the last payment, the claimant had no right of action under the New Jersey Compensation Act.
Following several hearings, commencing January 19, 1943, and concluded on February 21, 1946, the Bureau entered an order December 20, 1948, in which the petitioner was awarded permanent disability from March 18, 1935, to the date of the decedent's death, April 21, 1944.
Appellant contends (1) that the petition dated December 21, 1933, and filed on January 4, 1934, is still in full force and effect; (2) that the petition filed on August 20, 1942, was not filed out of time; that it was a method of reopening the prior order for temporary disability, because it was still within the time of the weekly payments due petitioner; and (3) that neither petitioner nor petitioner's decedent is guilty of laches.
Respondent contends that the Bureau's judgment entered on July 12, 1933, awarding temporary disability and decreeing that there was no permanent disability is res judicata of the issue raised by appellant; that the order of dismissal entered on January 31, 1935, terminated appellant's right of *Page 6 
further action against respondent, and appellant and her decedent are guilty of laches.
A careful examination of the record convinces us that the supplemental petition filed by decedent on May 16, 1934, for increased disability, was outstanding at the time of the hearings commenced on January 19, 1943, which ultimately resulted in an award for permanent disability. Without discussing and deciding the efficacy of the order of dismissal entered on January 31, 1935, the application for the order of dismissal was clearly applicable to only one petition, namely: the petition filed by decedent on January 4, 1934, as the notice thereof was addressed to Herman M. Wilson, decedent's attorney who filed that petition. This conclusion is emphasized by the fact that the supplemental petition filed on May 16, 1934, stated that decedent's attorney was Max Kummel. The record is barren of any application for dismissal of the May 16, 1934, supplemental petition. It is also significant that subsequent to the return day (December 26, 1934), of the application for dismissal of the January, 1934, petition, to wit: on January 2, 1935, the Bureau issued a notice to Max Kummel, whose name appears as petitioner's attorney on the supplemental petition filed on May 16, 1934, that a hearing of petitioner's claim would be held on January 9, 1935. It seems clear to us that the proposed hearing was intended to be on the supplemental petition filed by decedent on May 16, 1934.
Respondent charges petitioner and decedent with laches in prosecuting the claim for increased disability. However, we cannot ignore the undisputed facts in this case that clearly explain the delay by petitioner and her decedent in proceeding to a hearing on the claim for permanent disability. It is quite apparent from the proofs that decedent's mind became seriously affected within a comparatively short period of time after the award of temporary disability in July, 1933. This mental condition of decedent became progressively worse and resulted in his commitment to the New Jersey State insane asylum at Marlboro on March 17, 1935, from which condition he never recovered and, in fact, died *Page 7 
there on April 2, 1944. In the meantime, no action was taken by respondent to dismiss the May, 1934, supplemental petition nor was any action taken by it to make payment of the temporary disability award until December 10, 1937, when appellant, Doshka Torbyn, was appointed as guardian of her husband. Respondent cites the case of Ringwalt Linoleum Works v. Liquor,89 N.J.L. 452 (Sup. Ct. 1916), in support of its charge of laches. That case may be distinguished from the case sub judice
in that in the Ringwalt case it was established that petitioner had failed to offer any satisfactory explanation as to why it did not take any action from the time of the last hearing date to the date set for hearing, no order having been entered continuing the matter from the last prior hearing date, June 2, 1914. In the case sub judice, the factual situation hereinabove recited fully explains and justifies the apparent failure of decedent and appellant to proceed with the prosecution of the claim, coupled with the fact that respondent took no action aimed at dismissal of the May, 1934, petition. The defense of laches was not raised in the proceeding below and is not, therefore, arguable on this appeal. Board of Education of City of Garfield v. State Board ofEducation, 130 N.J.L. 388 (Sup. Ct. 1943). We would add that laches is a defense when the proofs establish that the respondent has been prejudiced thereby. Stroebel v. Jefferson Trucking Rigging Co., 124 N.J.L. 210 (Sup. Ct. 1940); affirmed,125 N.J.L. 484 (E. A. 1940). We find that not only was there no allegation of laches raised by respondent below, but that respondent contributed to the delay that ensued from the filing of the supplemental petition in May, 1934, and that under the proofs respondent was not prejudiced thereby.
Our courts have emphasized the importance and necessity that an employee injured under the Workmen's Compensation Act shall be given every opportunity to present his case and have it determined on the merits. This rule of law was clearly set forth in the opinion of Mr. Justice Oliphant, speaking for the Supreme Court in Skislak v. Continental Mining Smelting Corp.,1 N.J. 167 (1948), wherein he stated at p. 170: *Page 8 
"`No petition shall be dismissed for want of prosecution * * * until after notice shall be served by the respondent on the petitioner or his attorney, that unless the cause is moved for hearing within one month from the date of the service thereof, the claim will be considered abandoned and the petition dismissed.'
"In explicit language the statute fixes the time within which the cause must be moved for hearing i.e. within one month from the service of the notice of the motion for dismissal. * * * It is no answer to say the notice advised petitioner that application for the dismissal would be made on November 14, 1946, a date beyond the one month period provided in the statute. Petitioner had a legal right to ignore the notice for noncompliance with the statute. It was a procedural pre-requisite that she be given one month from the date of service of the notice to move her cause.
"While statutes relating solely to procedure should be liberally construed with a view to the effective administration of justice nevertheless such as take away or diminish fundamental rights must be strictly construed. Hill v. Hill, 93 N.J. Eq. 567
(Ch. 1922); affirmed, 95 N.J. Eq. 233 (E. A. 1923)."
In view of R.S. 34:15-27, permitting a review of an award within two years from the date the injured person last received compensation, doubt is expressed whether the doctrine of resjudicata may be aptly applied to determinations in workmen's compensation cases. Safety Insulated Wire and Cable Co. v. Courtof Common Pleas of Hudson County, 90 N.J.L. 114 (Sup. Ct.
1917), at pp. 117, 118:
"* * * The legislature has * * * established the test of `incapacity' as the determining factor whether an award shall be diminished or increased, as the case may be. The incapacity which the legislature had in mind was the incapacity to perform labor. * * *
"It must be borne in mind that the basic principle of the Compensation act is indemnity. Therefore, when it appears, in a case where an award has been made, that the incapacity upon which the award was based had diminished or ceased, it becomes the duty of the court upon a proper application to interfere and grant relief."
Cf. Stroebel v. Jefferson Trucking Rigging Co., supra; CentralHome Trust Co. v. Gough, Deputy and Acting Commissioner, etc.,Superior Court, App. Div., October 28, 1949, 5 N.J. Super. 295.
An after discovered physical condition proven to be causally related to the original injury, as the result of which the employee becomes totally and permanently incapacitated, *Page 9 
we think is such an increase as the Legislature intended to protect for the employee under the pertinent statutory provision permitting the right to review. Respondent lays great stress on the fact that the judgment for the original award stated that under the proofs petitioner had not suffered any permanent injury. However, judicial notice may be taken of the fact that medical and surgical experience has proven that an injury which at first appears to be trifling may later be revealed as having caused a permanent physical disability. To say under such circumstances that one so injured should be estopped later from asserting, within the statutory period of review, his newly discovered injuries and establishing that they are causally related to the accident, and thus denying him his right of compensation therefor, would be a distortion of the statutory language and the legislative intendment. Mr. Justice Heher, speaking for the Supreme Court in Tucker v. Frank J. Beltramo,Inc., 117 N.J.L. 72 (1936); affirmed, 118 N.J.L. 301 (E. A. 1937), said at pp. 79, 80:
"* * * The spirit of the law is to provide weekly compensation for the disabled employe or his dependents, in the event that death ensues; and the obvious purpose of this provision is to permit of a readjustment in the award when warranted by a subsequent change in condition. * * * The genius of the provision is the correction of injustice consequent upon the inability of medical and surgical experts to make an accurate prognosis — to forecast with certainty the operation of nature's processes; and it is therefore an entirely reasonable and wholesome measure to effectuate the beneficent object of the statute, i.e., to secure to the injured employe the prescribed compensation for the disability actually suffered. * * *"
To like effect is the case of Drake v. C.V. Hill Co.,117 N.J.L. 290 (E. A. 1936), wherein Mr. Justice Heher said atp. 292, speaking of judgments of the Bureau:
"* * * It is final and conclusive as to all questions of law and of fact comprehended by the determination, including those involving jurisdiction, the right to compensation, and the nature and extent of the existing disability, subject only to correction on appeal and the authority vested in the bureau to `reopen' its own adjudications and its continuing jurisdiction to modify the award of compensation to accord with an after occurring enlargement or diminution of the incapacity so found to have ensued from the established compensable *Page 10 
injury. A sine qua non to revision in the exercise of the continuing jurisdiction conferred by paragraph 21-f, supra, is a change in the condition of the employe occurring subsequent to the rendition of the judgment which materially increases or diminishes the disability. A petition for compensation for augmented incapacity, while predicated on the original judgment, initiates what is essentially a new proceeding based on a new factual situation, and the taking of an appeal does not operate to deprive the injured employe of this remedy. See Tucker v.Frank J. Beltramo, Inc., 117 N.J.L. 72."
Our review of the record brings us to the conclusion that the award by the Bureau for permanent disability was supported by the evidence. The petition asserted permanent disability attributable to an accident that admittedly arose out of and during the course of the employment. The testimony of the decedent's wife and of the decedent's cousin relative to his conduct and mental attitudes following the accident, the opinions of Dr. J. Berkeley Gordon, superintendent of the State Hospital at Marlboro, and his medical attendant, Dr. Cole, that the injury was the probable cause of the insanity, establish a causal relationship between the accident and the total incapacity of decedent to a probable degree of certainty to warrant the award of the Bureau. Russo v.Wright Aeronautical Corp., 1 N.J. 417 (Sup. Ct. 1949);Weisenbach v. Borough of New Milford, 134 N.J.L. 506 (Sup.Ct. 1946).
We have considered all of the other arguments advanced respectively by the appellant and respondent and for the purpose of this determination we do not deem it necessary to discuss them.
We are of the opinion that the petition of August 20, 1942, cannot be maintained, as it was not filed within the statutory period. However, we find that the petition of May 16, 1934, which is still outstanding, justified the review allowed by the Bureau and the proofs establish increased incapacity arising out of the original injury of January 4, 1933, and that the Bureau's award of compensation for increased disability is justified.
The judgment of the court below is reversed and the judgment of the Bureau is affirmed. *Page 11