28 N.J. Super. 566 (1953)
101 A.2d 99
EWALD MARKANT, PETITIONER-APPELLEE,
v.
HOMMER TOOL & MANUFACTURING CO., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Essex County Court Law Division.
Decided December 1, 1953.
*567 Mr. John E. Neville argued the cause for petitioner-appellee.
Mr. William E. James argued the cause for respondent-appellant.
FOLEY, J.C.C.
This is a workmen's compensation appeal from an award in favor of the petitioner which was based on a finding by the deputy director that as a result of an accident arising out of and in the course of his employment petitioner suffered a cerebral hemorrhage. This episode concededly has resulted in disability total in extent and permanent in character.
Below, the appellant contested the happening of the accident and notice of it to the employer. However, on this appeal the only grounds urged for reversal in respondent's brief and on oral argument are that the petitioner "failed to sustain the burden of proof * * * that the episode described by him was the competent producing cause of the cerebral hemorrhage" and, buttressing this argument, that the "hearing officer" failed "to give appropriate evidential value to the opinion of the treating physician relating to cause and effect," it now being conceded that the deputy director was justified in finding that the petitioner had sustained the compensable accident to which he testified.
Petitioner, 54 years of age, a machinist who had been employed by the respondent for about six years without loss of time, testified that at about 11:45 A.M. on December 10, 1951, while tearing down a wall for the purpose of installing a machine, he bumped his head as he attempted to go through a hole. The blow was severe enough to cause bleeding, a dazed condition and severe headache, and as a *568 result of it he was unable to work for the remainder of the day, though he stayed on the job until quitting time at 4:30 P.M. A fellow workman, Charles Stanford, testified that he witnessed the occurrence and that the petitioner was "out" for a few minutes. Stanford saw a large cut on petitioner's head, which was bleeding, to which he applied a handkerchief. From that day on petitioner suffered from increasingly severe headaches on the left side from front to back, which reached their climax on December 30 when his eyes became bloodshot and he could not see. He also had dizzy spells which became more frequent and more intense about a week after the accident. Because of dizziness on December 24 he required the assistance of a fellow employee in finding his car. December 24 was the last day he worked and from then until December 31 his condition worsened steadily. Toward the evening of that day he suffered what later proved to be a paralytic stroke involving his right arm and leg.
He was then taken to the Overlook Hospital by ambulance, where he remained until January 17, 1952. Upon admission a diagnosis of "cerebral accident" was made. Finally his condition was diagnosed as "right sided hemiplegia due to hemorrhage into left internal capsule," secondary to which was "arteriosclerotic cardiovascular disease," "varicose ulcer left leg," and "secondary anemia." The latter two conditions are conceded to be unrelated to either the accident or the claimed disability.
The petitioner testified that upon his admission to the hospital he was unable to speak and so gave no history of illness prior thereto. The history contained in the hospital record is dated January 3 and was given by petitioner's wife. It makes no mention of the industrial accident upon which the claim petition is based, and its general purport is that petitioner had been in perfect health, that his acute physical difficulties dated from December 25, 1951, and were related only to a flare-up of the ulcer condition.
Dr. Herbert Boehm, who qualified as a specialist in neuropsychiatry, when called by the petitioner, testified that *569 he had examined him on December 18, 1952 and diagnosed his condition as a "contusion of the head, right hemiplegia" and "personality changes." The diagnosis of "contusion" rested on the history which he obtained. In answer to a hypothetical question which stressed the factors of the accident and the symptomatology of increasingly severe headaches and dizzy spells, the doctor said the hemiplegia was the proximate result of the accident of December 10.
The respondent urges in its brief and in oral argument that the petitioner must fail because the hypothesis of headaches and dizziness is without factual support and that therefore any conclusion drawn therefrom is false. The argument is made that the effect of the positive testimonial assertions made by petitioner on the subject of his symptoms is completely overcome by the fact that he never gave a history of these symptoms to the hospital authorities or to Dr. Wagner. This contention is entirely untenable. As already related, the petitioner was unable to give a history at the time he was admitted to the hospital and the only history found in the institution's record is one obtained from his wife some three days after admission. There is nothing in the testimony to suggest that Dr. Wagner ever tried to elicit any statement of prior complaints and symptoms from petitioner during his stay of 17 days in the hospital or during the course of home treatment following discharge from the hospital. Considering the catastrophic nature of the petitioner's collapse, it is not strange that he did not volunteer details of his prior condition to his doctor. And it is scarcely necessary to observe that the petitioner's testimony as to symptoms is not negated merely because a declaration of history from another source did not include a statement of his symptoms. It was always within the power of respondent at the trial to attempt to show that Dr. Wagner had solicited a history from the petitioner and that the history then obtained was not consonant with his testimony dealing with the accident and its results. That there is no such testimony in the record supports the conclusion that the doctor did not query him about events *570 leading up to the stroke. So the hypothesis presented to Dr. Boehm was legally and factually sound.
Thus, as the respondent was put to its proof, the hypothesis which it was required to meet was that the petitioner had suffered the accident of December 10 and there ensued the chain of symptoms which he ascribed to it. This the respondent failed to do. It employed the tactics of completely ignoring the petitioner's claims and posited the hypothesis propounded to its doctors solely on the facts contained in the historical and diagnostic phases of the hospital record. As could well be expected with these limitations, the respondent's medical witnesses, Dr. Wagner and Dr. Blumberg, traced the causation to the factor of arteriosclerotic cardiovascular disease which appeared in Dr. Wagner's secondary diagnosis. Had the proofs been left in this posture Dr. Boehm's opinion would have stood alone and without challenge, since the other doctors were not given the opportunity to come to grips with the crucial factors of traumatic incident and physical deterioration. However, through questions posed by petitioner's counsel and the deputy director, the respondent's physicians finally expressed their opinions of the validity of the petitioner's theory of causation, both conceding that the possibility of causal relation could not be denied. While, of course, the petitioner was obliged to establish that the stroke was the probable result of the accident, it is significant that the respondent's doctors did not describe his claim as one which was beyond the realm of possibility and so entirely uncolorable.
It is a circumstance of great cogency that the petitioner's testimony depicts a dramatic change from physical well-being to a condition of ill-health which, within the space of three weeks, disabled him from further work and advanced in marked symptomatic changes to a cerebral hemorrhage and consequent paralysis. This sequence of events, coupled with the clear and positive opinion of Dr. Boehm that the trauma and the cerebral hemorrhage were causally related overwhelms the opinions of the respondent's physicians, which are academic in the sense that they are *571 based upon a hypothesis that excludes the vital factor of accidental injury. Accordingly this court must concur in the finding of the deputy director that the total and permanent disability is the direct and proximate result of an accident arising out of and in the course of petitioner's employment. Cf. Schust v. Wright Aeronautical Corp., 7 N.J. Super. 54 (App. Div. 1950).
It is urged that the testimony of Dr. Wagner on causation must be accorded greater weight than that given to Dr. Boehm's because of the doctrine that the opinion of a treating physician is entitled to greater weight than that of a medical expert who examines for the purpose of testifying. Dr. Wagner was not called in until after the petitioner had suffered the cerebral hemorrhage. He had not seen the petitioner for three or four years prior thereto, and on the prior occasion had merely referred him to another physician for treatment of the leg ulcer. His diagnosis of the end result was merely that reached by the other doctors in the case. The time of onset of the arteriosclerotic cardiovascular condition, which he included in his secondary diagnosis, was entirely unknown to him. As he put it, it could have existed for a matter of months or for many years. Apparently he relied on the history obtained by the admitting interne, as it seems plain from the evidence that he conducted no search or probe for causative factors which might have accounted for the development of the stroke. Thus it does not appear that he acquired any knowledge in the course of treatment that enabled him to give a more reliable opinion on causation than was given by Dr. Boehm. Since the rule rests upon the supposed superior knowledge of a treating physician, it is not applicable under the facts of this case.
For the foregoing reasons the judgment will be affirmed.