72 N.J. Super. 220 (1962)
178 A.2d 219
BARNETT SHAPIRO, PETITIONER-APPELLANT,
v.
NEWARK STEEL DRUM CO., INC., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1961.
Decided February 9, 1962.
*221 Before Judges GOLDMANN, FOLEY and FULOP.
Mr. Paul Frank argued the cause for appellant (Messrs. Jacob, Alfred & Richard Levenson, attorneys).
Mr. Frank Fink argued the cause for respondent (Mr. James J. Carroll, attorney).
The opinion of the court was delivered by FOLEY, J.A.D.
Petitioner appeals from a judgment of the County Court dismissing his workmen's compensation claim petition on the ground that the evidence failed to establish a causal connection between his condition of myocardial infarction and the duties of his employment. Petitioner had prevailed in the Workmen's Compensation Division.
*222 The basic disagreement between the Division and the County Court involved a determination of whether the petitioner had established by a preponderance of the probabilities that his work duties caused or contributed to the onset of a coronary episode which admittedly he suffered on October 17, 1958. At the time of decision both tribunals were guided, of course, by the then existing state of the law. Since the entry of the county court judgment the Supreme Court in Dwyer v. Ford Motor Company, 36 N.J. 487 (1962) has refined the ratio decidendi of heart cases in respects which will hereinafter be noted and, thus, it is deemed advisable that the essential facts of the case be restated.
On October 17, 1958 petitioner reported for work at 7:00 A.M. He was employed as a fork lift operator. The vehicle he operated had a maximum load carrying capacity of five tons. It was gasoline powered and was manually operated by levers from a driver's seat. It was used to supply various machines with raw materials which were then fabricated; some of these materials were located in the main building of respondent's plant and some in a warehouse a short distance from the main building. The fork lift was parked overnight in the main building. At about 7:30 A.M. petitioner having received instructions from his foreman, prepared to drive to the warehouse where he was to pick up raw material and deliver it for fabrication. In order to do so it was necessary for him to open an overhead door of the main building, which he described as a wooden door 14 or 15 feet high. It was variously described by other witnesses as being 10 feet by 10 feet and 12 by 15 feet in size. It was the usual type of overhead door, equipped with a handle near the bottom and springs and counterbalances which aided in the lifting as the door moved along overhead runners. In describing the ordinary operation of the door petitioner said that one had to bend down and grasp the handle and "using every ounce of effort, you have to lift up as high as  oh, approximately, your *223 shoulders or maybe just a little higher, take both hands and push for all you are worth to get it up to the top," and that to close the door one must "grasp a rope which is attached to the door and, again, exerting a great deal of effort pull the door back down."
The condition of the door was one of the few matters in factual dispute. The testimony of the petitioner and two coemployees called as witnesses by him, indicated that it had been struck on various occasions by trucks; that it was difficult to lift and at times would stick; that complaints of the condition of the door had been made. The persons to whom the complaints were made were not identified. On the other hand, respondent's plant superintendent and also its plant manager denied that complaints had ever been made to them, and said that the door at all times worked in a normal manner, and that no great effort was required to open it. The compensation judge resolved this issue in favor of the petitioner; the County Court judge found it unnecessary to decide it since, as we shall point out, he concluded in effect that the petitioner's description of the accident, which follows, was unworthy of belief. Having in mind the opportunity of the compensation judge to hear the witnesses and to observe their manner and demeanor in testifying, and the lengthy period over which this judge has been called upon to determine questions of credibility, we are satisfied that probability favors a finding that substantial effort was ordinarily involved in opening and closing this door, no matter what may have been its precise physical condition on the particular occasion under attention.
Petitioner testified that as he bent down and grasped the door he found it very hard to open; that it stuck "a great deal more" than usually and that as he was pulling on it he felt a burning sensation in his chest. He stopped momentarily and then proceeded to push the door up. As he did so the burning sensation increased in intensity. He climbed on the lift truck and drove out of the building, *224 but the burning "was so strong" he had to stop. He rested for a few seconds then went back and pulled the door down; the burning continued. He then drove to the warehouse which is about 100 yards away, where he opened another overhead door. This door worked "fairly easily," but as he bent down to grasp the handle to open it the burning became sharper. He then proceeded to lift a bundle of steel weighing approximately five tons; this was accomplished mechanically, and the only effort required of him was to operate the levers which control the lifting device. He backed the truck out of the building, got down from it, closed the door and drove back to the main building. There he again opened the large door, and this time the burning sensation was so severe that he "actually had to stand in the driveway a moment and wait." Presently, he delivered the steel to its destination, got down from the truck, and was instructed by his foreman to take another lift truck to pick up another load. He walked to this truck, put his hand on the steering wheel and his foot on the step, but the pain became so severe that it doubled him over. He waited for a "minute." He broke out in a sweat and went to the rest room where he sat on the toilet seat and bent over. After about five or ten minutes he went back to the shop to resume his work. He again felt the pain and returned to the rest room; the burning continued. It was very severe, finally he found some relief when he sat on the floor. Another employee came in and asked him, "what's the matter?" He said, "tell the boss I want to go home. I'm sick." His foreman came and asked him whether he would like to go to the doctor. He said, "yes" and was sent by automobile to the office of Dr. Dolsky, a company doctor. The burning sensation was "very, very sharp" by then, and he felt "a slight amount of pressure" in his chest. He told the doctor about the pain and indicated to him that it was at the pit of the sternum. The doctor said that he had a ruptured ulcer, and recommended that he enter Alexian Brothers Hospital in Elizabeth for *225 surgery. He requested that he be permitted to go to the Perth Amboy General Hospital so that he might have the benefit of his own doctor's services. This was agreeable to Dr. Dolsky and he was taken to Perth Amboy Hospital. There he was admitted by an intern and his physician Dr. Milton R. Bronstein was called. It was then 8:30 A.M.
Doctor Bronstein testified that when he arrived at the hospital petitioner was in the emergency room. He complained of pain in his chest and "was not too coherent to questioning," so the doctor did not question him "too much because of his pain." He was given an injection of demerol immediately to ease the pain. Dr. Bronstein then learned that Dr. Dolsky had made a diagnosis of ruptured duodenal ulcer. Dr. Bronstein found this diagnosis to be implausible and ordered an electrocardiogram. This revealed a coronary thrombosis  in more technical terms, an "inferior myocardial infarction." Dr. Bronstein also said that petitioner gave him a history that after lifting a door at work he had a burning sensation followed by pain in his chest. Petitioner remained in the hospital until November 15, 1958 and returned to work on December 8, 1958.
There was evidence that in July 1957 petitioner had gone to Dr. Bronstein for treatment, complaining that he wasn't feeling well, was tired, had no "pep," and "had some abdominal pain." The doctor made a tentative diagnosis of "nervous stomach with the possibility of gall bladder disease or an ulcer." Antacid tablets were prescribed, and two weeks later he returned to the doctor. The pain had cleared up, but certain foods caused him "a little distress." Dr. Bronstein did not treat him thereafter until called to the hospital on October 17, 1958.
It seems quite clear that the petitioner made no mention whatever of straining at the overhead door or of any other work-connected incident or incidents, until he gave the history to Dr. Bronstein. Specifically, we find that no complaint was made concerning the door, nor of any work activity, to his foreman, the employee who came to him *226 in the rest room and subsequently drove him to the hospital, to the plant physician, or to the intern who admitted him to the hospital.
On October 21, 1958 petitioner filed a claim with the insurance trust fund of the union of which he was a member, seeking cash benefits for the period of his disability and certifying that it was not the result of an accident which arose out of and in the course of his employment. The claim was supported by a form statement executed by Dr. Bronstein. The statement contained a question of whether in the opinion of the doctor the injury arose out of and in the course of employment or occupational disease. The question was followed by two boxes designated "yes" and "no"; the doctor placed a check mark in the latter box.
The problem here presented differs somewhat from that which arises in many heart cases. There was no evidence that petitioner was suffering from a chronic cardiovascular ailment. It is conceded that the diagnosis of myocardial infarction was correct; that the symptoms of burning and pain in the chest accompanied by excessive sweating are compatible with coronary thrombosis; and that the onset of the symptoms came while petitioner was actively engaged in his employment duties. Lastly, Dr. Jerome Kaufman, who testified for respondent, in answer to a hypothetical question propounded to him by respondent's attorney which did not include any reference whatever to petitioner's account of the difficulty he had in raising and lowering the overhead door, nor of the coincidental onset of a burning sensation in his chest, denied causal connection between the work incident and the infarction, but frankly stated that he did so because the question contained no suggestion of a "strain incident," and went on to say that had there been a "strain incident" described therein "during which or immediately after which the presenting symptoms" of a coronary occlusion were found, he would say that the employment contributed to the onset of the infarction.
*227 Here, the determinative question is whether the series of incidents described by the plaintiff with respect to the opening and closing of the doors, including the physical stresses entailed thereby, accompanied by the sudden onset of the pain, did in fact occur.
As noted, respondent did not come to grips with the hypothesis presented by petitioner to his expert. Respondent ignored petitioner's testimony that he was suddenly attacked by severe distress as he strained to lift and to close the large overhead door and that he suffered similarly as he bent down to open the smaller one. Cf. Markant v. Hommer Tool & Mfg. Co., 28 N.J. Super. 566, 570 (Cty. Ct. 1953). In these circumstances respondent's medical evidence, carefully appraised, reveals an implied contention that the admitted heart seizure was merely coincidental with, and unrelated to, petitioner's work duties. Our courts have frequently expressed their disfavor of this defensive approach. As was said by Justice Heher in Weisenbach v. Borough of New Milford, 134 N.J.L. 506, 509 (Sup. Ct. 1946):
"Mere coincidence is not a permissible deduction in the face of evidence which, according to the teachings of long experience, demonstrates a causal relationship. It is a concept that vanishes in the light of a reasonably probable explanation contra that excludes pure conjecture; such is the principle that guides one's judgment in the everyday affairs of life."
See also Galloway v. Ford Motor Co., 5 N.J. 396, 400 (1950), and Fink v. City of Paterson, 44 N.J. Super. 129, 135 (App. Div. 1957), wherein it was observed that "the immediacy of the attack in relation to the episode of stress is most persuasive."
The Workmen's Compensation Division accepted petitioner's uncorroborated account, and in light of the medical testimony, concluded that causal relationship had been established. The County Court, on the other hand, rejected petitioner's testimony and concluded that there was no *228 credible factual foundation upon which the opinion of his expert Dr. Irving H. Applebaum could be founded.
In dismissing the petition the County Court judge leaned heavily on petitioner's failure to mention a strain incident to any of the several persons with whom he was in contact before he was seen by Dr. Bronstein at the hospital. In that connection the court said:
"It is just not conceivable to this court that the petitioner would have experienced the exertion and strain incident described by him and yet not mention such incident or even casually have made some reference thereto in the several conversations he had with other employees, or in the history given to Dr. Dolsky or the history given to the intern at the Perth Amboy General Hospital or to Dr. Bronstein. History is an exception to the hearsay rule because it is believed by the law that at such times, for his own benefit and treatment, the patient concerned will, as a matter of his own health and safety, with reasonable probability tell the truth. The only witness indicating that any mention was made of a fact or facts involved in the incident was Dr. Bronstein, the treating physician, who testified that the petitioner told him in the hospital at the time he was taking a history that the burning sensation occurred when he was opening the door, there not being included in this statement any mention by the petitioner of any difficulty in opening the same. The proofs are naked of any corroboration as a matter of reasonable probability. The evidence as to the door being damaged, repaired, difficult to open and sticking from time to time is not reasonably certain as to date to indicate with any reasonable probability that any such condition existed on the date of the alleged incident claimed by the petitioner. Corroboration of course is not required by any rule of law, however, such would be helpful in this case in view of what the court regards as the unusual silence and general conduct of the petitioner concerning the claimed incident, as the difficulty claimed could be an after-thought on the part of the petitioner as it was not mentioned until the hearing date. And further, in view of his conduct in filing a claim with the union welfare fund indicating and, in fact, certifying that his illness was not the result of an accident or work connected.
Somewhat similar conduct on the part of a petitioner is commented upon and was found not normal and held to be inconceivable by former Justice Heher in Schlegel v. H. Baron & Co., 130 N.J.L. 611 (Sup. Ct. 1943), and the court reaches the same conclusion here. The petitioner's conduct in not mentioning any fact or facts concerning the incident claimed and later filing a claim with the union welfare fund indicating that the illness was not the result of any accident or work connected does not appear to be normal conduct or such as would warrant this court giving credibility and belief thereto."
*229 We have no doubt that in some circumstances the failure of one to identify an event as the cause of a sudden and unexpected illness or injury may tend to cast doubt upon the actual happening of such event. It is in the nature of the human being to point to the person or thing which fells him, almost by reflex action. Yet, the failure to do so should not be deemed crucial if the circumstance of immediate nonrevelation is overborne by proof which cogently establishes that the event in question did in fact occur.
In this case we cannot overlook that petitioner reported to work at 7:00 A.M. in good health and immediately went about his duties which were to some extent strenuous. It is unquestioned that to perform them he was obliged to drive his fork lift truck from the main building to the warehouse building, and that to do so he was required to open and close the overhead doors on both buildings. As we have already indicated, we are satisfied that the opening and closing of the overhead door in the main building required appreciable physical effort. There can be no doubt that petitioner did open and close it en route to the warehouse building, and that he opened it again on his return. There can be no question that thereafter he was unable to continue work, was beset by chest pains which prostrated him and were of such intensity as to bring on profuse sweating. Nor is there doubt that his condition was such that he required immediate medical aid and hospitalization. Lastly, it is plain that sometime on the morning of October 17, after he started work in good health and during the very short time he continued to work, he suffered a coronary thrombosis. In this complex of circumstances we find it unreasonable to conclude that the effort necessarily involved in the performance of petitioner's duties did not at least contribute to the coronary episode.
Why the petitioner did not mention the door lifting incident before he did we cannot know. But it is readily understandable that one who at an earlier time has suffered *230 symptoms of an ulcer, not unlike those presented on the occasion in question, might in his own mind attribute his pain to the previous condition. So, also, is it conceivable that a person doubled up in pain so severe that he seeks relief by sitting on the floor would be immediately concerned only with relief from his torment, and not with what caused it. The actions of a person so circumstanced cannot be assessed in terms of what a person in less dire straits would do. And with respect to what petitioner said (or did not say) to the intern at the hospital, it must be remembered that his pain was so severe that it was found necessary to administer a strong narcotic.
In considering whether or not the petitioner was the victim of a work-connected incident, the trial judge, as noted, also attached considerable significance to petitioner's having filed a claim with the union welfare fund for benefits, in which both he and Dr. Bronstein certified that his illness was not the result of a compensable industrial accident. It is true that a fact finder is entitled to consider the filing of an application for sick benefits as relevant to the issue of whether or not the claimant suffered a compensable accident, cf. Augustin v. Bank Building and Equipment Corp., 44 N.J. Super. 242 (App. Div. 1957), just as the failure of a petitioner to relate his work duties to a heart attack in a history given to his physician is a subject for judicial consideration on the same issue, Schlegel v. H. Baron & Co., 130 N.J.L. 611 (Sup. Ct. 1943). Yet, the bearing of such conduct upon the ultimate determination of whether a compensable accident occurred must be assayed in light of the entire proof in each individual case.
The evidence of Dr. Bronstein plainly evinces that he is of the school of medical thought which views physical strain or exertion as a "possible" contributing cause of coronary thrombosis, as distinguished from one which may be so identified as a matter of "probability." It is reasonably inferable that the doctor communicated these views to petitioner. In such circumstances it was not unreasonable *231 for petitioner, having no medical knowledge himself, to seek the benefits for which he applied, and for Dr. Bronstein, having doubt himself in this purely medical matter, to aid petitioner in his effort to promptly obtain funds with which to support himself and his family during his incapacity. It would frustrate the law if one who was entitled to compensation benefits, caused or contributed to by his work duties, were to be denied them simply because he and his doctor were guided by medical concepts which were at odds with the legal consequences of the facts of a case.
In Dwyer v. Ford Motor Company, supra, the Supreme Court, after an exhaustive examination of the basic decisional law of the State in heart cases, reviewed certain principles which appear to have guided the County Court's thinking in the matter sub judice. In Dwyer the court apparently rejected the thesis of Jacobs v. Kaplan, 56 N.J. Super. 157 (App. Div. 1959), that in order to recover, a claimant must establish by a preponderance of probabilities that the work effort preceding the occurrence of a heart attack entailed a stress or strain which was greater than the ordinary stresses or strains of ordinary living, and so was an event or happening beyond the mere employment itself.
In commenting on the principle first enunciated in Schlegel v. H. Baron & Co., supra, and later expressly affirmed in Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127, 138 (1958), that it is presumed that injury or death from heart disease is the result of natural physiological causes, the court said:
"Experience with workmen's compensation cases over the intervening years has now convinced us that the `presumption' rule has imported an unnecessary and artificial factor into their determination at both trial and appellate levels."
and the court emphasized that proof of a single incident of work effort is not an essential element in proving causality, when it said:
*232 "We are convinced that the series of exertions so acted on the seriously diseased heart as to join with it to an appreciable extent in hastening the fatal attack. Our emphasis is placed on the total or cumulative effect of the work effort, and not on any single act or any single exertion beyond that usually associated with the work * * *."
With the concepts of single incident causation, and the presumption that a heart episode is the result of natural physiological causes removed from consideration Dwyer defines the standard of determination as follows:
"Naturally the onus of establishing connection between a heart attack death and the work effort rests on the compensation claimant. The burden has been described in various ways but may be stated concisely in this fashion: Such claimant has the burden of showing by the preponderance of the believable evidence that the ordinary work effort or strain in reasonable probability contributed in some material degree to the precipitation, aggravation or acceleration of the existing heart disease and the death therefrom. In this context, the significance of `some material degree' cannot be stated with mathematical precision. It means an appreciable degree; a degree greater than de minimis; it means that there was some employment exertion capable medically of helping the attack  of furthering its progress." (Emphasis added.)
Our analysis of the proofs in this case and our resulting factual conclusions, convince us that the petitioner proved by a preponderance of the believable evidence that the work effort or strain to which he was subjected during the period of his employment on October 17, 1958, and particularly the exertions attendant upon his raising and lowering the large overhead door, in reasonable probability contributed in a material degree to the precipitation of his heart attack.
Accordingly, the judgment of the County Court is reversed and that of the Workmen's Compensation Division is reinstated.