**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5856-17

CLARENCE SEALS,

    Plaintiff-Respondent,

v.

MIA MOORE SEALS,

    Defendant-Appellant.

_____

Submitted November 18, 2020 – Decided February 10, 2021

Before Judges Alvarez and Sumners.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-1981-12.

Mia Moore Seals, appellant pro se.

Clarence Seals, respondent pro se.

PER CURIAM

    This highly contentious divorce was tried on sixteen days over approximately nine months. The Family Part judge's June 29, 2018 forty-eight-

page decision comprehensively addressed child support, alimony, counsel fees, expert fees, and the equitable distribution of assets and liabilities acquired during this thirty-year marriage. We affirm the decision, based on the judge's cogent analysis regarding all financial issues, other than some of the allocation of equitable distribution of credits and debits.[1] As to those, we remand.

We consider most of defendant Mia Moore Seals's points on appeal to be so lacking in merit as to not warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). That conclusion is based on the judge's reasoning, findings of facts based on the evidence in the record, and his even-handed application of relevant laws, including the child support and alimony statutes. The judge found both parties to be credible witnesses, although he considered plaintiff's testimony more reliable. Additionally, some of the issues defendant seeks to have reviewed on appeal were not raised at trial, nor did she present any proofs about them.

In order to place our decision in the appropriate context, we set forth the following. The parties have two children, born in 1996 and 2001. The older

---

[1] The judge's decision regarding each party's contribution to the younger son's college expenses is included in his written opinion, but not the amended judgment. A further amendment is warranted to clarify each parent is responsible for a proportional share.

A-5856-17

child basically refused to have contact with his father since at least the filing of the divorce complaint, requiring expert intervention and the participation of a guardian ad litem, in an ultimately unsuccessful effort to reunite father and child.

Plaintiff Clarence Seals had attempted to address what he perceived to be the alienation of the child's affections. He was excluded from the child's life, including the child's college selection process. At this juncture, the child has graduated from college.

The parties share joint physical and legal custody of the younger child. The judge ordered them to fund the costs of the child's college education, proportionate to their income at the time, with the further proviso that if defendant is then unemployed, $58,000 annual income would be imputed to her.

The marital home went into foreclosure during the pendency of the divorce. Plaintiff was required to make certain payments on account of the property. The payments were disputed at trial. They will be more specifically addressed in the relevant section of the opinion. The parties are self-represented on appeal; defendant was self-represented during most of the trial proceedings.

The following are defendant's points:

> POINT 1
> THE COURT ERRED IN AWARDING CHILD
> SUPPORT.

A-5856-17

POINT A
THE COURT ERRED IN FAILING TO AWARD CHILD SUPPORT FOR [the parties' older child], A 21-YEAR OLD FULL-TIME COLLEGE STUDENT.

POINT B
THE COURT ERRED IN AWARDING CHILD SUPPORT FOR [the younger child] AND DID NOT ADEQUATELY CONSIDER OR EXPLAIN FACTORS UNDER N.J.S.A. 2A:34-23(a) FOR FAMILIES WITH INCOMES EXCEEDING NEW JERSEY CHILD SUPPORT GUIDELINES.

POINT 2
THE COURT ERRED BY NOT DISTRIBUTING MARITAL DEBT ON DEFENDANT'S CIS ACQUIRED DURING THE MARRIAGE.

POINT 3
THE COURT IGNORED RELEVANT AND MATERIAL FACTS AND DID NOT ADEQUATELY CONSIDER OR EXPLAIN A NUMBER OF RELEVANT FACTORS RESULTING IN AN UNJUST ALIMONY AWARD.

POINT 4
THE COURT ABUSED ITS DISCRETION IN DENYING AN ADJUSTMENT OF PENDENTE LITE SUPPORT.

POINT 5
THE COURT ABUSED DISCRETION BY UNJUSTLY ENRICHING PLAINTIFF FOR VIOLATING THE PENDENTE ORDER AND AMASSING 401(K) ASSETS POST-COMPLAINT

4

WHILE DISSIPATING MARITAL ASSETS AND NOT PAYING ORDER[ED] SUPPORT FOR YEARS.

POINT 6
THE COURT ERRED BY CREDITING PLAINTIFF FOR ALLEGED PAYMENTS TO CREDITORS PENDENTE LITE WITH NO PROOF OF PAYMENTS OR ACCOUNTING FOR DEBT ACCUMULATED ON THOSE ACCOUNTS PENDENTE LITE.

POINT 7
THE COURT ERRED BY CREDITING PLAINTIFF $29,000 FOR ALLEGED PAYMENTS FOR UTILITIES IN A VACANT, FORECLOSED HOME WITHOUT PROOF OR CONSIDERATION OF REASONABLENESS WHILE PLAINTIFF WAS IN VIOLATION OF PENDENTE ORDER FOR SAME EXPENSES.

POINT 8
THE COURT ERRED BY DENYING CREDIT TO DEFENDANT FOR PAYMENTS MADE TO CHASE VISA PLAINTIFF HAD BEEN ORDERED TO PAY PENDENTE LITE.

POINT 9
THE COURT ERRED BY NOT ADEQUATELY CONSIDERING OR EXPLAINING A NUMBER OF RELEVANT FACTORS IN EQUITABLE DISTRIBUTION LEADING TO AN UNJUST ALLOCATION AND DISSIPATION OF MARITAL ASSETS.

POINT 10
THE COURT ABUSED ITS DISCRETION BY NOT ADEQUATELY CONSIDERING OR EXPLAINING RELEVANT FACTORS IN DENYING COUNSEL

5

FEES AND NOT REALLOCATING LITIGATION-RELATED EXPENSES.

POINT 11
THE COURT ERRED BY NOT APPLYING OR CONSIDERING RELEVANT FACTORS IN DETERMINING COLLEGE EXPENSE SUPPORT FOR OWEN.

POINT 12
THE COURT ERRED BY NOT AWARDING DEFENDANT CREDIT FOR [HER] SHARE OF $8,500 MARITAL ASSET, 2007 LEXUS GRANTED PLAINTIFF TO USE AS TRADE-IN FOR NEW CAR IN APRIL 2018.

POINT 13
THE COURT ERRED BY FAILING TO AWARD DEFENDANT [AN] EQUITABLE SHARE OF PLAINTIFF'S SEVERANCE PACKAGE FROM BANK OF NEW YORK MELLON IN AUGUST 2013.

POINT 14
THE COURT ERRED IN ADMINISTRATION OF JUSTICE BY INTERRUPTING DEFENDANT'S CROSS-EXAMINATION AND TESTIMONY AND INSTRUCTING HER TO MAKE POINTS DURING CLOSING ARGUMENTS THAT COURT INDICATED WOULD OCCUR MULTIPLE TIMES DURING TRIAL, AND THEN DENYING THOSE CLOSING ARGUMENTS.

We comment only on points five through eight, and thirteen.

A family court's order pertaining to equitable distribution is reviewed "to determine whether the court has abused its discretion." La Sala v. La Sala, 335

N.J. Super. 1, 6 (App. Div. 2000). In other words, "[w]e must determine 'whether the trial court mistakenly exercised its broad authority to divide the parties' property or whether the result reached was bottomed on a misconception of law or findings of fact that are contrary to the evidence.'" Sauro v. Sauro, 425 N.J. Super. 555, 573 (App. Div. 2012) (quoting Genovese v. Genovese, 392 N.J. Super. 215, 223 (App. Div. 2007)).

In conducting such a review, this court must balance "the need for a check on unbridled discretion in the trial court against affording a trial [de novo] in this court. An equitable distribution will be affirmed even if this court would not have made the same division of assets as the trial judge." Perkins v. Perkins, 159 N.J. Super. 243, 247-48 (App. Div. 1978). "Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference" to the factual findings of the family judge. Cesare v. Cesare, 154 N.J. 394, 413 (1998). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). We reverse only if the family judge's conclusions are "clearly mistaken" or "wide of the mark," to "ensure that there is not a denial of justice." Parish v. Parish, 412

7

N.J. Super. 39, 48 (App. Div. 2010) (quoting <u>N.J. Div. of Youth & Fam. Servs.</u> <u>v. E.P.</u>, 196 N.J. 88, 104 (2008)).

In the court's written decision regarding equitable distribution, it listed the sixteen factors enumerated in N.J.S.A. 2A:34-23.1. We reiterate the discussion. Specifically, regarding factor six—"[t]he economic circumstances of each party at the time the division of property becomes effective"—court found plaintiff was employed and earning a base salary of $224,000, with the potential for bonuses. N.J.S.A. 2A:34-23.1(f). The court imputed income of $58,000 to defendant, exclusive of alimony. Neither party had significant savings or assets. Generally, the court in most instances divided the marital assets and liabilities equally.

Regarding factor seven—"[t]he income and earning capacity of each party"—the court found both parties were well-educated, and should in the foreseeable future continue to earn incomes at their current levels.

Regarding factor nine—"[t]he contribution of each party to the acquisition, dissipation, [or] preservation . . . of the marital property"—the court found "the parties shared equally in the acquisition of assets and debts."

A-5856-17

I.

Contrary to defendant's argument on appeal, the trial judge did not abuse his discretion in disagreeing that plaintiff dissipated assets. We briefly touch upon some of defendant's arguments involving issues not included in the remand, on which we affirm the trial judge's rulings.

In order to determine whether conduct constitutes dissipation of marital assets, in <u>Kothari</u>, we stated:

> In resolving this issue, courts have considered a variety of factors, including, "most commonly," the following:
>
>> (1) the proximity of the expenditure to the parties' separation, (2) whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage, (3) whether the expenditure benefitted the "joint" marital enterprise or was for the benefit of one spouse to the exclusion of the other, and (4) the need for, and amount of, the expenditure.
>
> The question ultimately to be answered by a weighing of these considerations is whether the assets were expended by one spouse with the intent of diminishing the other spouse's share of the marital estate.
>
> [255 N.J. Super. at 507 (citations omitted).]

The judge considered the parties' conduct during the litigation, ultimately concluding that the positions advanced at trial were reasonable and maintained

9

by the parties in good faith. We agree with the judge's conclusion that plaintiff did not expend assets with the intent to reduce the marital estate.

For example, defendant objects to the court allowing plaintiff to retain sole ownership of his post-divorce-complaint 401(k). When plaintiff's employment with one bank ended in 2013 and he became re-employed in June 2014, he resumed contributions to his 401(k) plan. He initially said the payments were mandatory—although when shown paycheck documents on cross-examination, had to agree that the plan was voluntary. Plaintiff explained he "chose not to opt out of the plan because the [c]ourt didn't say I couldn't save money." He had earlier been ordered not to contribute to his 401(k) to ensure that maximum cash flow was available to the family during the pending proceedings. Plaintiff testified that despite the 401(k) contributions, he maintained his pendente lite obligations. The judge found in accord with clear precedent that plaintiff should therefore be permitted to retain his post-divorce savings. See Steneken v. Steneken, 367 N.J. Super. 427, 440 (App. Div. 2004) (holding retirement assets "attributable to post-divorce employment [are] not subject to equitable distribution").

The judge did divide a pre-divorce-complaint deferred equity plan from a prior employer, however. It contained stocks, some of which had been

A-5856-17

previously sold for payment of the guardian ad litem appointed by the court with regard to the oldest child. That pre-divorce-complaint asset was subject to equitable distribution.

There is no doubt that plaintiff made voluntary payments to his 401(k) contrary to a court order. But that fact alone does not make the account subject to equitable distribution. He acquired the asset while simultaneously satisfying his support obligations and other pendente lite financial responsibilities. The point of the order was not to include an asset otherwise not eligible for equitable distribution in the marital estate, but to ensure plaintiff had sufficient cash to comply with the pendente lite orders. The 401(k) was not established until two years after he filed for divorce. Defendant's further assertion that plaintiff should not be entitled to reap the benefit of his entire 401(k) account because it would unjustly enrich him has no basis in the law and does not warrant further discussion. See R. 2:11-3(e)(1)(E).

In a similar fashion, defendant contends the court abused its discretion by not awarding her credit for a severance package plaintiff received in August 2013. However, defendant did not make the argument to the trial court. It "is a well-settled principle that appellate courts should decline to consider issues not fully presented at trial unless the issues are jurisdictional or concern matters of

great public interest." Winer v. Winer, 241 N.J. Super. 510, 524 (App. Div. 1990) (quoting Matter of Board of Educ. of Town of Boonton, 99 N.J. 523, 536 (1985)). That standard is not met here. Defendant was aware of the severance package, and thus should have brought it to the trial court's attention during that trial.

Defendant asserts she omitted the severance package because she was unaware of the law. Ignorance of the law here does not entitle her to a remand where she had the opportunity to raise this issue at trial. See R. 2:12-2 (noting issues not raised at trial are only addressed on appeal where "interests of justice" require). Further, part of this severance package–defendant's bonus for the 2013 performance year received in February 2014–was already distributed to her pursuant to the April 11, 2014 order's bonus distribution provision. Consequently, this is not an appropriate issue for consideration on remand.

II.

Defendant also contends that the judge erred in calculating equitable distribution by crediting plaintiff with half of $29,343, which he testified he paid towards the utilities at the former marital residence since the filing of the divorce complaint. Beginning on July 31, 2012, plaintiff was ordered to pay those expenses. Schedule A expenses for utilities came to $1027 monthly. Plaintiff

12

A-5856-17

testified he paid all the utility bills for the marital residence during 2012, 2013, and 2014. Defendant vacated the home in September 2015, and it was demolished after foreclosure in December 2016. In his written summation statement, plaintiff claimed that defendant did not provide all the bills associated with the upkeep of the marital home, but he nonetheless paid $29,343 towards the utilities.

Defendant alleges that plaintiff lied. If he did not lie, then she argues he should not be compensated for "absurd spending[,]" and adds that he provided no documentation in support of the alleged payments. In his written summation, plaintiff asserted to the contrary that he not only paid for the utilities, he paid for the property landscaping to be maintained, as he feared that after foreclosure the parties would owe additional sums. When the property was sold for $1.01 million, the parties had no personal liability on the first mortgage, a substantial benefit to both.

Plaintiff contends the evidence regarding this issue was supplied in his summation statement and on appeal relies on the court's factual findings. It is not clear to us from the record if plaintiff ever actually documented how he arrived at the specific total. Although we disagree with defendant that if the payments were made, they were "absurd[,]" and he should be denied a credit for

A-5856-17

that reason, plaintiff should document those expenses. Thus, on remand, plaintiff must document the payments before the judge decides the matter. The judge will render his decision with regard to pendente lite utility and maintenance payment for the former marital home based on documentation.

III.

Defendant challenges the credit the court calculated for plaintiff's pendente lite payments on a Citibank Visa account. The court found there was a $7050 balance remaining on the account, apportioning it evenly between the parties. Plaintiff claimed he paid the balance at the rate of $100 per month since 2012, but that nonetheless there was a balance of $7950 on the card as of June 2017. He testified that the amount of debt on the card was close to $13,000 when the complaint was filed. In his summation statement, he asserted the total he paid was $8693, with a balance remaining of $7050. Most likely the difference in calculations results from interest accumulating on the outstanding balance. During the remand hearing, plaintiff must produce the proofs necessary to clarify that point.

Affirmed in part, reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5856-17